[Civ. No. 4265.   Second Appellate District, Division Two.—April 18, 1927.]

## LOUISE H. GIBBS, Appellant, v. JACK PETERS et al., Defendants; JOHN SHARPE, Respondents.

[1] QUIETING TITLE—VENDOR AND VENDEE—DEEDS—WRITINGS—OFFER AND ACCEPTANCE—EVIDENCE.—In this action by a vendor to quiet title to a parcel of real property, the contention of the vendee's assignee that he was entitled to a deed from the vendor by reason of certain writings signed by the vendor cannot be sustained, where the vendor, in a letter, indicated a willingness to execute a deed upon the payment, within a stated time, of a sum of money, and such offer was not accepted and all proceedings under it expired by lapse of the time set, and a later letter by the vendor showed neither that she agreed nor had theretofore agreed to extend the time fixed in her first letter, or that she

agreed or had theretofore agreed to execute a deed upon any consideration whatever, except upon a compliance of the terms of the original contract of sale made to the vendee.

---

(1) 27 C. J., p. 265, n. 24.

APPEAL from a judgment of the Superior Court of Los Angeles County. Charles S. Burnell, Judge. Reversed.

The facts are stated in the opinion of the court.

J. W. Morin for Appellant.

Ray C. Eberhard and Floyd M. Hinshaw for Respondent.

WORKS, P. J.—This is an action to quiet title. Plaintiff was the owner of a certain parcel of real property. She and one of the defendants Peters entered into a certain agreement in writing, whereby she agreed to sell the property to Peters and he agreed to buy it. The contract provided for the payment of the purchase price in certain monthly installments. Peters assigned to defendant Sharpe his interests in the contract and the latter promptly paid the installments due under it up to a certain time, whereupon, under date November 6, 1920, plaintiff wrote to a certain bank a letter in which she said: "This is to authorize you to accept of Mr. John Sharpe $1200 and to cancel his debt to me on [the real property mentioned]. Providing this note to be placed in your hands and stated amount $1200 be placed to my account in your bank not later than 1:30 P. M. on Monday of Nov. 8, 1920." Sharpe, however, received notice of the proposition embraced in this letter so late that he was unable to pay into the bank, within the time limit fixed by the letter, the amount named in it, but he did lodge the money with a certain title company. Thereafter certain conversations were had between plaintiff and Sharpe, and following that the title company, under date November 15th, wrote plaintiff a letter in which it was said: "Enclosed find grant deed, Gibbs to Sharpe which kindly sign and have acknowledged before a notary public and return to this office together with your demand for use of same, immediately. We have been holding funds to pay for this instrument for several days and the other parties to our escrow

are becoming impatient over the delay caused by your failure to call at this office and sign the deed as originally arranged. Kindly give this matter your immediate attention . . . '' To this letter plaintiff, by an undated note, answered thus: ''In reply to yours of Nov. 15 would say: All transactions concerning [the real property already mentioned] must be done through [the bank above referred to]. I have communicated with them concerning this matter and they will instruct me when a deed is to be signed. I also hold a copy of the original agreement with Mr. Sharpe which he has not fulfilled.'' Under date November 17th the title company wrote the bank the following letter: ''We are in receipt of a letter from Louise H. Gibbs . . . advising that all matters pertaining to a deed from Mrs. Gibbs to Mary A. Sharpe . . . must be done through your office, as you hold for collection the contract of Mrs. Gibbs covering above property, in favor of Jack Peters. We are enclosing herewith a deed, which would ask that you kindly have Mrs. Gibbs sign and have acknowledged and return to this office and we will promptly remit the stipulated amount of $1200.00 as per agreement of the parties concerned. As we are unable to close this escrow on account of the long delay in waiting for this deed, would thank you for your prompt attention to the matter. However, we cannot pay for the deed until the instrument is delivered to this office which, however, seems to be contrary to Mrs. Gibbs' demands.'' The president of the bank then wrote appellant, in a letter dated November 18th: ''I am enclosing herewith grant deed covering property formerly sold to Mr. Jack Peters. The Title Company advises us that you have agreed to accept $1200.00 in settlement of your contract. If that is true, please advise us to that effect and return the enclosed deed properly executed before a notary public.'' Appellant answered this letter by a memorandum written at the bottom of the sheet which contained it. She said: ''The above statement was true Nov. 8 but when Mr. Sharpe failed to comply to my request to have $1,200 in your care not later than Nov. 8 I found that I would be obliged to collect that amount from another source at a great loss to me. I do not need the money now so we will let it remain as it is on monthly payments.''

This communication ended the negotiations between the parties. Sharpe, apparently electing to stand upon the letters, together with such oral negotiations as ran along with them, discontinued the payment of the installments called for by the contract of sale and thus put himself in default. On December 16, 1921, more than a year after the negotiations were terminated, appellant filed her complaint in the present action. It was in the usual form of a complaint to quiet title. Sharpe in his answer denied the allegations of appellant's pleading and set up an affirmative defense in which he alleged the assignment of the contract of sale by Peters to himself and averred that he was the owner of the property involved "under and by virtue" of it. Decree went for defendant Sharpe and this appeal by Mrs. Gibbs is the result.

Respondent Sharpe asks an affirmance of the judgment on the ground that he was entitled to a deed from appellant under the negotiations which took place between them. Appellant insists that the right to a deed does not exist because of the language of section 1698 of the Civil Code: "A contract in writing may be altered by a contract in writing, or by an executed oral agreement, and not otherwise." Respondent counters with the contention that the writings signed by appellant, notably the undated letter in response to the communication of the title company written on November 15, 1920, amounted to a new agreement between the parties; and that they were sufficient to operate as such, under the language of the opening sentence of section 1624 of the same code to the effect that certain contracts are invalid "unless the same, or some note or memorandum thereof, is in writing and subscribed by the party to be charged, or by his agent."

[1] We can see nothing in the writings signed by appellant which constitute a note or memorandum of any contract, no matter what was attempted to be agreed to during the oral negotiations between the parties. In her letter of November 6th to the bank appellant indicated a willingness to execute a deed upon the payment, within a stated time, of a certain sum of money. This offer was not accepted and all proceedings under it expired by lapse of the time set. Her undated letter to the title company shows neither that she agreed nor had theretofore agreed to extend the

time fixed in her first letter, or that she agreed or had theretofore agreed to execute a deed upon any consideration whatever, except upon a compliance with the terms of the original contract of sale made to Peters. In truth, her letter shows no promise whatever, nor is it a note or memorandum of any promise she had already made. It is unnecessary to refer to other defects in the paper when it is sought to be considered as an effective note or memorandum within the statute.

Judgment reversed.

Craig, J., and Johnson, J., *pro tem.*, concurred.