FIERS, APPELLANT, v. JACOBSON ET AL., RESPONDENTS.
POWER, RESPONDENT, v. FIERS ET AL., APPELLANTS.

No. 8896.

Submitted September 29, 1949. Decided November 8, 1949.

211 Pac. (2d) 968.

Messrs. Loble and Loble and Mr. Don Sullivan, all of Helena for appellant. Mr. Lester H. Loble and Mr. Henry Loble argued the cause orally.

Messrs. Weir, Gough and Matson, Helena, for defendant, cross-complainant and respondent Power.

Messrs. Paul W. Smith, David R. Smith, J. Miller Smith and Mr. T. B. Weir, all of Helena for defendant and respondent Jacobson. Mr. Paul W. Smith and Mr. T. B. Weir argued the cause orally.

MR. JUSTICE ANGSTMAN:

This is an action to compel specific performance of an agreement to convey real estate.

The agreement to convey was a written lease containing an option to purchase.

It was made between plaintiff and defendants Jacobsons on February 26, 1944. By its terms plaintiff leased the described land for a two-year period from and after March 1, 1944, at a stipulated rental payable in installments on the 1st of March and October of each year commencing March 1, 1944.

It contained this paragraph: "The parties of the first part [being defendants Jacobsons] hereby give to the party of the second part [being plaintiff] the privilege of purchasing all of the above described premises at any time before the expiration of this lease for the sum of Four Thousand Five Hundred Dollars ($4,500.00). In the event the party of the second part elects to exercise this option, he should give the parties of the first part written notice thereof before the expiration of this lease and at the time of giving such notice, shall pay them the sum of . . . . . Terms agreeable to both parties at the time of sale . . . . . Dollars ($    ) on said purchase price, the balance of said purchase price to be paid as follows, to-wit:————.''

It is this paragraph of the lease that gave rise to this controversy.

Plaintiff contends that he exercised the option to purchase by tendering the full amount of the purchase price. Defendants Jacobsons in their answer and defendant Pauline Power in her separate answer and cross-complaint allege and the proof shows that some of the land in question after the lease and option was given to plaintiff was deeded by L. O. Jacobson to Ella Jacobson, and that she thereafter sold all of it to Pauline Power on March 1, 1945, for $4,500, a part of which was paid on that date.

Defendants also pleaded that plaintiff is estopped from exercising the option to purchase and had waived his right to do so because he had repeatedly informed defendants by word of

mouth that he did not want to and would not exercise the option; that Pauline Power in reliance upon these representations purchased the land in question from defendant Ella Jacobson and paid part of the purchase price together with some taxes. The court expressly found that these representations were made by plaintiff to Pauline Power and Ella Jacobson, and they in reliance thereon made the agreement whereby Pauline Power purchased the land from Ella Jacobson, and that thereby plaintiff waived his right to exercise the option.

As conclusions the court found that plaintiff is estopped from asserting any right to exercise the option.

A decree was entered quieting title in defendant Pauline Power and Ella Jacobson and awarding them rental against the plaintiff in the sum of $150.00. From the decree plaintiff has appealed.

The principal question involved is the propriety of the court's conclusion that plaintiff is estopped from claiming the right to exercise the option. It is the contention of plaintiff (and the point was saved by appropriate objection) that all evidence tending to support the estoppel was inadmissible as colliding head-on with section 7569, R. C. M. 1935. That section reads: "A contract in writing may be altered by a contract in writing, or by an executed oral agreement, and not otherwise."

The lease in question here, being for two years, was required to be in writing. Sections 6859, 7519, 10611, R. C. M. 1935.

Section 7569 does not alone apply to such contracts as are required by the Statute of Frauds to be in writing but applies to all written contracts. 27 C. J., Statute of Frauds, sec. 416, page 327; 37 C. J. S., Statute of Frauds, sec. 232.

The effect of the statute is to say to parties entering into a contract, if you choose to place it in writing you may not alter it by any subsequent oral agreement unless such agreement is fully executed. Here proof of the alteration in the written lease and option rested entirely in parol.

In Quong v. McEvoy, 70 Mont. 99, 224 Pac. 266, 268, this court said: "Upon the trial defendant sought to show that prior

to February 2, 1922, plaintiffs orally agreed to surrender the lease and to vacate the premises as soon as defendant could procure a new tenant, and they could wind up the business and remove their own property, and complaint is made of the rulings excluding this offered evidence. The lease was in writing. It is not pretended that the oral agreement was executed * * *.'' Because of section 7569, this court held that the district court did not err in excluding the evidence.

The Supreme Court of Washington had before it the question of altering an option contract in Woolen v. Sloan, 94 Wash. 551, 162 Pac. 985, 986. In that case plaintiff had paid $1,000 for the option and sued to recover it. The court, in holding that the option contract could not be altered by a subsequent oral agreement, said: ''The appellant admits the execution of the contract and the note, as well as the payment of the note, but claims that, after the option contract was entered into, and during the 90-day period covered by the option, the parties thereto orally rescinded the contract, and that the respondent agreed that, if he subsequently sold the property, he would repay the option money, together with interest thereon. The option contract, being for real estate, of course was required by the statute of frauds to be in writing. A contract which the statute requires to be in writing cannot be abrogated or rescinded by a subsequent oral contract, unless such oral contract is accompanied by acts of part performance sufficient to remove the requirement that it shall be in writing.''

Here the evidence purporting to alter the writing fails to show an *executed* oral agreement so as to meet the requirements of section 7569 and in fact fails to show any *agreement* at all. There was no consideration for the alleged abandonment or waiver of the option, and hence no agreement at all.

Ordinarily to permit evidence of an oral statement that plaintiff did not intend to exercise the option is to open wide the door to abuses which section 7569 was designed to prevent.

Defendants take the view that there are exceptions to the general rule and that in a proper case a person may be estopped

from relying upon the Statute of Frauds and that plaintiff here is estopped because of statements made by him to now assert the right to exercise the option by virtue of section 10605, subdivision 3, R. C. M. 1935, reading: "The following presumptions, and no others, are deemed conclusive: * * * (3) Whenever a party has, by his own declaration, act, or omission, intentionally and deliberately led another to believe a particular thing true, and to act upon such belief, he cannot, in any litigation arising out of such declaration, act, or omission, be permitted to falsify it."

The evidence relied on to show an estoppel is the following: L. O. Jacobson testified that in the latter part of June or the first part of July 1944 he had a conversation with plaintiff in Wolf Creek. The witness was asked this question: "Q. What, if anything, then and there, did the plaintiff tell you with reference to his intention, with regard as to this land in dispute? A. Well, he said: 'I am going to make a trip,' * * * A. He said: 'I am looking for a ranch that is more suitable.' He said: 'I have a place in mind I intend to buy somewhere,' I can't describe it, 'near Terry, or Miles City.' So that was about all there was in the conversation. * * * A. Well, that is what he said, that he was going to buy a ranch and didn't want to stay on our ranch for that reason."

Mrs. Power testified that she met plaintiff in Wolf Creek in October 1944. She asked him if he wouldn't lease her land which adjoined that on which he held the lease and option and that he replied, "No, I am going to move away from Wolf Creek; I am going back to Terry."

She testified that she said to him, "Then you are going to leave Mrs. Jacobson's ranch?" And that he replied, "Yes, I can't make a living there and I am not going to stay in Wolf Creek. I am going back to sheep."

It should be noted that whatever plaintiff may have said in June, July or October 1944 about leaving the Jacobson ranch, the fact is that on October 1, 1944, he paid $150 rental covering the rental until March 1, 1945, and continued in possession of the

property. He offered the rental in March 1945 and Mrs. Jacobson refused to accept it and told him to pay it to Mrs. Power, which he did.

Other evidence of estoppel was testified to by Mrs. Power as being a conversation at the ranch on February 17, 1945, when she and Mrs. Jacobson went to see plaintiff. She testified:

"A. I went there to find out whether Albert Fiers eventually wanted to buy the ranch or was going back to Terry; that is why I went.. * * *

"Q. State what Mrs. Jacobson said with regard to this contract, Exhibit A to the complaint. * * * A. I can't tell you her exact words, but the gist of it is: She said: 'Albert, I have brought Mrs. Power and I have come up here because I want to know whether you are going to buy my ranch or if you don't want it and are going to give up your option; Mrs. Power will buy it.' Albert said: 'I don't want the ranch; I can't make a living here; I have to work for the neighbors all around the community in order to pay you your rent.' He has been working for all of us. He said: 'No, I am not. I am supposed to pay the 1st day of March.' And he turned to me and said: 'Mrs. Power, I want to go to Terry and see if I can get the property I want over there.' He said: 'Will you let me, instead of paying my rent the 1st of March, will you let me pay it the 15th, if I don't get the property I want? If I get it, I am going to tear up my lease.' I said: 'What about Mrs. Jacobson?' He said: 'I don't care, if I can't make a living here.' I said: 'That is all right.' That was agreed to.

"Q. Now tell us whether or not you there stated to Albert Fiers, in substance, that you wouldn't buy or enter into the contract unless he intended to give up his option. * * * A. Yes, sir, that is why I was there."

She testified that she would not have purchased the land from Mrs. Jacobson except for this conversation with plaintiff. Mrs. Jacobson, testifying regarding the same conversation, said

that plaintiff stated, "I am going to move; I am not going to stay," that is all that was said.

Marvin Jacobson, son of L. O. Jacobson, testified that in June or July 1944 plaintiff stated to him that he was going to leave the place. He said a similar statement was made in August 1944.

Mr. Cramer, a real estate agent, said that Mrs. Jacobson wanted to see him about selling her ranch. He thereupon went to see plaintiff in the fall of 1944 and spoke to him about buying the place. He testified: "I asked him if he wanted to take up his option on the ranch and he said no, he didn't want to take up the option because of some place in the eastern part of the state he could buy, at Terry. I asked him if it would be all right if she sold the place to someone else and he said: 'Sure. Go ahead and sell it'."

The authorities recognize and apply the doctrine of promissory estoppel when the promise or representation relates to the abandonment of existing rights.

In 19 Am. Jur., "Estoppel," sec. 52, p. 657, it is said: "A truthful statement as to the present intention of a party with regard to his future act is not the foundation upon which an estoppel may be built. A person cannot be bound, by any rule of morality or good faith, not to change his intention, nor can he be precluded from showing such change merely because he has previously represented that his intentions were once different from those which he eventually executed. The reason on which the doctrine of estoppel rests wholly fails when the representation relates only to a present intention or purpose of a party, because its nature being uncertain and liable to change, it could not properly form a basis or inducement upon which a party could reasonably adopt any fixed and permanent course of action."

In section 53 the same author says:

"The broad rule stated in the preceding section to the effect that a promise to do or not to do something in the future does not work an estoppel must be qualified, since there are numerous cases in which an estoppel has been predicated on promises or

assurances as to future conduct. The doctrine of 'promissory estoppel' is by no means new, although the name has been adopted only in comparatively recent years. According to that doctrine, an estoppel may arise from the making of a promise, even though without consideration, if it was intended that the promise should be relied upon and in fact it was relied upon, and a refusal to enforce it would be virtually to sanction the perpetration of fraud or would result in other injustice. Promissory estoppel is sometimes spoken of as a species of consideration or as a substitute for, or the equivalent of, consideration; but the basis of the doctrine is not so much one of contract with a substitute for consideration, as an application of the general principle of estoppel, since the estoppel may arise although the change of position of the promisee was not in any way an inducement to the promise and was not regarded by the parties as any consideration therefor.

"The doctrine of promissory estoppel is most widely recognized and most frequently applied in cases of promises or representations as to an intended abandonment of existing rights."

To the same effect is 31 C. J. S., Estoppel, sec. 80, page 289, and Union Mutual Life Ins. Co. v. Mowry, 96 U. S. 544, 24 L. Ed. 674.

In Restatement of the Law on Contracts, section 90, it is said: "A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forebearance is binding if injustice can be avoided only by enforcement of the promise."

One may be estopped from relying upon the Statute of Frauds. Wolfe v. Wallingford Bank & Trust Co., 124 Conn. 507, 1 A. (2d) 146, 117 A. L. R. 932.

Estoppels are odious, are not favored and should be proven clearly, convincingly and satisfactorily. Smith v. Coutant, 232 Iowa 887, 6 N. W. (2d) 421.

The doctrine must be applied with great care and the equity

██ must be strong and the proof clear. La ˚Grange v. Datsis, Me., 46 A. (2d) 408.

In Davis v. Davis, 26 Cal. 23, 85 Am. Dec. 157, at page 168, the Supreme Court of California said: ''We may say in respect to parol evidence of the declarations and admissions of persons made long anterior to the trial, upon which an estoppel in pais may be sought to be founded, that it cannot be too carefully scrutinized by courts and juries. In all cases, it is the most dangerous species of evidence that can be admitted in a court of justice, and the most liable to abuse. In most cases, it is impossible, however honest the witness may be, for him to give the exact words in which the declaration or admission was made. Sometimes even the transposition of the words of a party may give a meaning entirely different from that which was intended to be conveyed. The slightest mistake or failure of recollection may totally alter the effect of the declaration or admission. And more than this, it is most unsatisfactory evidence on account of the facility with which it may be fabricated, and the impossibility, generally, of contradicting it when false.''

In Lyon v. Morgan, 143 N. Y. 505, 38 N. E. 960, 961, the Court of Appeals said: ''The doctrine of estoppel, when invoked for the purpose of working a change in the title to land, is to be applied with great caution. It permits verbal statements or admissions to be substituted in place of the written evidence of transfer which the statute of frauds and the general rules of law require in such cases, and hence should not be applied unless the grounds upon which it rests are clearly and satisfactorily established, and not then except in support of a clear equity, or to prevent fraud.'' And see to the same effect Faw v. Whittington, 72 N. C. 321 and McCormick v. Stephany, 61 N. J. Eq. 208, 48 A. 25.

And it may not be founded on a true statement as to a party's ██ present intention with regard to his future act. Cook v. Farley, 195 Miss. 638, 15 So. (2d) 352.

Plaintiff, of course, had not made up his mind at the time he ██ took the lease on the land in question as to whether

he would actually buy the land. That is why he took an option to purchase it. On the face of the agreement he had two years within which to make up his mind about the purchase.

His statements that he was going to abandon the property and move to Terry made before October 1944 were shown to be statements of present intention only for he evidently changed his mind before or on October 1st because he made the October payment of rental which gave him the right of possession for another six months or until March 1, 1945.

In other words, his actions spoke louder than the words imputed to him. Likewise the statements made by him in February 1945 are susceptible of an interpretation of present intention only. They were conditioned upon his being able to buy the property he wanted in Terry. If he could he was going to tear up the lease that he held from Mrs. Jacobson. He did not say what would happen regarding his lease and option if he could not get the Terry property. The fair implication is that he did not intend to give up the lease, for according to the statement which he is claimed to have made, he asked until March 15th to make payment of the rental in case he did not get the Terry property.

It should be noted too that the statements imputed to plaintiff were induced by those interested in obtaining a waiver from him. He did not make the statements with the view of gaining anything for himself. Plaintiff himself denied making the statements imputed to him. According to his evidence he simply stated in substance that he was not able at the time of speaking to raise the money necessary to buy the land.

Viewing the evidence in the light most favorable to defendants as we must, since the trial court found in their favor, we think it falls short of showing any equity in defendants' favor. The proof was not clear and convincing that plaintiff had abandoned his interest in the land. He still resided upon it, paid taxes upon it, except for one year when they were paid by Mrs. Power, paid his rent in full, and had complied with all the terms of his written lease. His statements were not so definite and certain as

to reasonably be expected to induce action on the part of the promisee in selling the property to another during the life of the option agreement.

The statement to Mr. Cramer could not reasonably be expected to induce action on the part of Mrs. Power, particularly when there was no proof that the statement was communicated to her and when it is conceded that Mr. Cramer did not make the sale to Mrs. Power. 19 Am. Jur., Estoppel, sec. 153, p. 809. So far as Mrs. Power and Mrs. Jacobson are concerned the statements made to them by plaintiff were not sufficiently definite and certain to show a present intention to waive the right to exercise the option in the future so as to work an estoppel. Had Mrs. Power or Mrs. Jacobson desired a waiver they should have sought it in writing supported by a consideration or in statements sufficiently definite and certain to warrant a reasonably prudent person in advancing money on the purchase price. Mrs. Power is in no sense an innocent purchaser for she knew that Mrs. Jacobson was obligated in writing to convey to plaintiff under the written option which was still outstanding when she purchased.

The court erred in finding that plaintiff was and is estopped from asserting the right to exercise the option.

The court also found that there was not a sufficient tender made by plaintiff to constitute an acceptance of the option. On May 22, 1945, and within the time provided in the lease and option plaintiff mailed the following notice to Mrs. Jacobson:

"You are hereby notified that I have delivered to the First National Bank and Trust Company of Helena, Montana, the sum of $4.500.00 cash to be delivered to the right parties in interest upon the delivery to the Bank for me a good and sufficient deed conveying a fee simple title to me for the following real property situated in the county of Lewis and Clark, state of Montana, to-wit: [here followed description]

"I am hereby notifying you that I am exercising the option to purchase said property in accordance with the terms of that certain agreement dated February 26, 1944 between L. O.

Jacobson and Mrs. Ella Jacobson, parties of the first part and Albert Fiers, party of the second part. I also want an Abstract of Title showing merchantable title in the sellers deed and abstract to be examined by my attorney as soon as received by the Bank. Money is to be delivered on approval of deed and title by my attorney."

A similar letter was sent by him to Mrs. Power. Plaintiff also deposited $4,500 in the First National Bank and Trust Company with instructions to deliver it to Mrs. Jacobson and L. O. Jacobson when proper deeds were delivered together with abstracts showing title in fee simple in sellers after examination by an attorney to be designated after the papers were received by the bank. The money was still in the bank subject to those orders at the time of the trial.

The complaint which was filed on March 1, 1946, also alleged a readiness and willingness to pay the stipulated amount necessary to purchase the property under the option.

It is apparent from the record and from what has already been said that defendants would not have conveyed the property to plaintiff no matter what he did in the way of a tender.

Their position was that plaintiff had waived or abandoned his right to exercise the option. If the tender were not adequate and that was the ground of refusal to convey the property then it was incumbent upon defendants to make objection thereto at the time because of section 10682, R. C. M. 1935, reading: "The person to whom a tender is made must, at the time, specify any objection he may have to the money, instrument, or property, or he must be deemed to have waived it; and if the objections be to the amount of money, the terms of the instrument, or the amount or kind of property, he must specify the amount, terms, or kind which he requires, or be precluded from objecting afterward."

Here no objection was made to the tender at the time it was made or until this action was brought.

Likewise a tender is unnecessary when to make it would be an

idle and useless act. Thompson v. Lincoln Nat. Life Ins. Co., 110 Mont. 521, 105 Pac. (2d) 683.

What this court said in Blackford v. Judith Basin County, 109 Mont. 578, 98 Pac. (2d) 872, 876, 126 A. L. R. 639, has application here. We there said: "The insufficiency of the tender is immaterial, first, because under the general law (17 C. J. S., Contracts, page 991, sec. 487; 62 C. J. 663, sec. 6; 12 Am. Jur. 891, sec. 334) and under the provisions of section 10682, R. C., objections to a tender are waived unless specified at the time; and, second, because it is waived where the tenderee's attitude would make the tender a vain and idle ceremony."

The court erred in holding that the tender under the circumstances shown by the record was insufficient. The plaintiff alleged generally that he has sustained damages because of defendants' refusal to convey the property to him, but he offered no proof in support of the allegation and hence is not entitled to recover damages.

The judgment is reversed and the cause remanded with directions to enter judgment in accordance with the prayer of plaintiff's complaint, except as to damages which as above stated is not sustained by any proof.

ASSOCIATE JUSTICES FREEBOURN, METCALF and BOTTOMLY, concur.

MR. CHIEF JUSTICE ADAIR, specially concurring:

On February 26, 1944, the plaintiff Albert Fiers and the defendants L. O. Jacobson and Mrs. Ella Jacobson deliberately put their agreements concerning the lands here involved in the form of a written contract to which each subscribed.

Such written agreement "may be altered by a contract in writing, or by an executed oral agreement, *and not otherwise.*" Section 7569, R. C. M. 1935. Emphasis mine.

This statute declares a rule of substantive law which rests on the doctrine that when parties have deliberately put their agreements in the form of a written contract they shall not be allowed

to show that the agreement was something else and even though testimony in violation of the statute be admitted at the trial, such testimony has no legal effect. Bauer v. Monroe, 117 Mont. 306, at pages 313, 314, 158 Pac. (2d) 485. Here there is neither "a contract in writing" nor "an executed oral agreement" altering the original written agreement. Hence such agreement so made and executed on February 26, 1944, continues and remains as written. On these grounds I concur in the result.

Rehearing denied December 12, 1949.