57 So.2d 1 (1952)
SOUTH INV. CORP. et al.
v.
NORTON et al.
Supreme Court of Florida, en Banc.
January 29, 1952.
Rehearing Denied March 10, 1952.
Kunkel & White and R.E. Kunkel, all of Miami, for appellants.
Kirtley, Kirtley & Kirtley and Susan Kirtley, all of Miami, for appellees.
ROBERTS, Justice.
This is an appeal from a final decree of the Circuit Court for Dade County granting appellees, Robert Norton and Jesse Norton, specific performance of an option agreement with the appellant, South Investment Corporation.
The facts as found by the Special Master and as adopted by the Chancellor are as follows: Appellant, South Investment Corporation, leased Jesse and Robert Norton each one-half of a certain vacant lot for a period of 99 months, and also executed to them options giving them the right of purchase of said lot at any time during the life of the lease, and while the lease was "in good standing" for a purchase price of $500.00 for each half of the lot, upon which purchase price the monthly payments of $5.00 under each lease would be credited. The leases contained a forfeiture clause in the following language: "* * * should said rent, taxes * * * herein provided for any time remain due and unpaid for the space of 15 days after the same shall become due, the lessor may, at its option, consider the said lessee  tenant  at sufferance and immediately reenter upon said premises * * *." It was provided in the options that "This option is given to you with the distinct understanding that the same cannot be assigned by you without our written consent and that the same shall be effective only so long as you are in good standing and not in default under the said lease, and should you default under the said lease this option shall, if such default continue *2 for 15 days, become immediately null and void without any notice from us and we will be under no obligation whatsoever to convey our tax title to you."
The appellees paid the rent on the lot for some eighteen months. Thereafter, in November of 1941, and at a time when they were some four months in default, Mr. Morat, the secretary of the appellant corporation, called upon the appellees in an effort to collect the back rent and was told by Mrs. Jesse Norton that her uncle had recently died and that as soon as she could get her portion of his estate, she would complete the payments upon the entire lot. There is no conflict in the testimony that, at this time, Mrs. Norton made a payment of $5.00 on each half of the lot, which payment of $10.00 was accepted by Mr. Morat. There is, however, a conflict as to the arrangements for further payment agreed to by Mrs. Norton and Mr. Morat at that time. Mr. Morat testified that he agreed to wait only until February 1, 1942, and that if the payments were not made by that time, "the deal is off." Mrs. Norton testified, however, that Mr. Morat agreed to wait until the estate was settled, which might be as much as five years, and that at that time she could "settle up everything, including the taxes, and including the interest." She also testified that, during this conversation, Mr. Morat stated that "In case I get a sale for the property, I will let you know before I sell it."
The Nortons made no further payments of rent, nor did they pay the taxes, and evidently no further communication was had among the parties until shortly after July of 1946, at which time Mrs. Norton called Mr. Morat and told him that she had received her money from the estate and wanted to exercise her option to buy the lot, but was advised by Mr. Morat that he had already sold the lot. The instant suit was instituted on January 5, 1948, after tender had been made and refused, and only a few days prior to the date of expiration of the 99-month lease and option agreements.
The Special Master recommended that the bill be dismissed for the reason that the lease was not "in good standing" at the time the appellees attempted to exercise their option to buy, and for the further reason that, by their long delay in exercising such option, the appellees were not in equity entitled to specific performance of such option agreement.
The recommendations of the Master were not accepted by the Chancellor, who was of the opinion that the lease agreement and the option agreement constituted a single transaction; that, as time was not made of the essence in the lease agreement, the appellant could not effectively terminate the appellees' rights under the option agreement without first giving them a formal written notice "fixing a time or deadline within which they must perform, otherwise have their rights terminated," and that, as this was not done in this case, the appellees were entitled to specific performance of the option agreement.
We think the Chancellor must be held in error for decreeing that the appellees were entitled to specific performance.
An option contract is not a contract of sale within any definition of the term; it is a unilateral contract which gives the option holder the right to purchase under the terms and conditions of the option agreement. Thus, if such terms and conditions are not met by the option holder, the unilateral contract does not become a bilateral contract, binding on both parties, and susceptible of enforcement by a court of equity in a suit for the specific performance thereof. See 49 Am.Jur., Specific Performance, Sec. 117, page 137.
In the instant case, the lease and the option agreement were properly construed by the Chancellor to constitute a single transaction; but it was, nonetheless, incumbent upon the appellees to prove that their acceptance of the option had been in accordance with the terms of the option agreement, that is, while the appellees were "in good standing and not in default under the said lease." Since it is undisputed that the appellees had been in default under the leases for over seven years at the time this suit was filed, the leases were certainly not "in good standing" at the time *3 the option was "accepted," unless the appellees could affirmatively show a waiver of the forfeiture on the part of the appellant, or that the appellant was, in equity, estopped from setting up the fact that the lease was not "in good standing" at the time of the acceptance by the appellees of the appellant's offer. See Fiers v. Jacobson, 123 Mont. 242, 211 P.2d 968; Crystal Lake Cemetery Ass'n v. Farnham, 129 Minn. 1, 151 N.W. 418; Lake Shore Country Club v. Brand, 339 Ill. 504, 171 N.E. 494, 503; 51 C.J.S., Landlord and Tenant, § 86, page 647.
The evidence relied upon by appellees, as showing a waiver or estoppel, was Mr. Morat's alleged agreement to wait until Mrs. Norton's uncle's estate was settled before requiring her to "settle up everything" under the option agreement. But this testimony, when coupled with Mrs. Norton's further testimony that Mr. Morat told her "In case I get a sale for the property, I will let you know before I sell it," amounted, at most, only to an oral promise to let Mrs. Norton have the first refusal of the property, if he had a chance to sell it; or, if he still had title at the time when she came into her uncle's estate, to sell it to her at that time. We do not think that such promises can be the basis for an estoppel. The authorities recognize and apply the doctrine of promissory estoppel when the promise or representation relates to the abandonment of existing rights; but, ordinarily, a truthful statement as to the present intention of a party with regard to his future act is not the foundation upon which an estoppel may be built. 19 Am.Jur., Estoppel, sec. 52, p. 657, cited in Fiers v. Jacobson, supra. It is also noted in the Fiers case that in Lyon v. Morgan, 143 N.Y. 505, 38 N.E. 960, 961, the Court of Appeals said: "The doctrine of estoppel, when invoked for the purpose of working a change in the title to land, is to be applied with great caution. It permits verbal statements or admissions to be substituted in place of the written evidence of transfer which the statute of frauds and the general rules of law require in such cases, and hence should not be applied unless the grounds upon which it rests are clearly and satisfactorily established, and not then except in support of a clear equity, or to prevent fraud."
In the instant case, the appellees were in default under the lease and option agreements at the time the above-mentioned oral representations were alleged to have been made. The appellant had the right, under the terms of the lease, to declare the lease forfeited; instead of doing so, he accepted a $10.00 payment under the leases and agreed either to wait until February 1, 1942, or until the estate was settled, if the property was not sold in the meantime. Thereafter, the appellees did nothing and parted with nothing of value; they even waited a year and a half after the settling of the estate of Mrs. Norton's uncle before bringing this suit for specific performance. We are not persuaded that this is a case where to refuse to enforce the oral promise "would be virtually to sanction the perpetration of fraud or would result in other injustice." 19 Am.Jur., Estoppel, section 53.
The appellees also contend that the appellant "waived the strict performance" of the lease and option agreements, so that the appellant, "if he desired to extinguish such equitable rights for the defaults he was well aware existed, was obliged so to notify lessee-buyer and at the same time give to the lessee-buyer a reasonable time within which to perform the contract." There is no merit to this contention.
Undoubtedly, in a proper case, a waiver of a default in a lease-purchase agreement would operate as a waiver of a right to deny the option, see Crystal Lake Cemetery Ass'n v. Farnham, 129 Minn. 1, 151 N.W. 418; but, in the instant case, according to appellees' evidence, there was actually no waiver of "a strict performance of the lease", but, instead, a complete abandonment and termination of the lease agreement. If, as testified to by appellant's officer, Mr. Morat, the previous defaults under the lease had been waived by him with the understanding that the entire transaction be settled on or before February 1, 1942, and if the appellees had offered, prior to that time, to exercise their option *4 to purchase, the appellant would be held to have waived its right to deny the option on account of the defaults under the lease and, we think, estopped to take advantage of the forfeiture provisions in the option agreement. But that is not the case here.
Since it has not been shown that the appellees exercised their option under the terms and conditions of the option agreement, or that such terms and conditions were waived, and in the absence of circumstances showing an estoppel, it must be held that the appellant was not bound to accept their offer, so that the appellees are not entitled to specific performance of the option agreement.
For the reasons stated, the decree appealed from should be and it is hereby
Reversed.
SEBRING, C.J., and TERRELL, THOMAS, HOBSON and MATHEWS, JJ., concur.
CHAPMAN, J., dissents.