HERBERT C. ANDERSON, Plaintiff and Appellant, v. KFBB BROADCASTING CORPORATION, a Delaware Corporation, David E. Bright, et al., Defendants and Respondents.

No. 10647

Submitted January 14, 1964. Decided April 6, 1964.

391 P.2d 2.

424

A. W. Scribner, (argued), Helena, for appellant.

Jardine, Stephenson, Blewett & Weaver, Arthur S. Jardine (argued), John D. Stephenson, (argued), Great Falls, for respondents.

MR. JUSTICE DOYLE delivered the Opinion of the Court.

This is an appeal from an order of the district court of Cascade County granting a summary judgment with prejudice against plaintiff, Herbert C. Anderson, hereinafter referred to

as appellant, in an action to recover damages from an alleged breach of contract.

Defendants, hereinafter collectively referred to as respondents unless specified otherwise, are: KFBB Broadcasting Corporation, a Delaware Corporation engaged in radio and television broadcasting in Montana; David E. Bright, a director and holder of approximately 55 percent of the capital stock of KFBB Broadcasting Corporation; Ernest L. Scanlon, a director and holder of approximately 20 percent of the capital stock of KFBB Broadcasting Corporation; Daniel T. O'Shea, a director and holder of approximately 25 percent of the capital stock of KFBB Broadcasting Corporation; Harriscope Broadcasting Corporation, an Illinois Corporation engaged in radio and television broadcasting in Montana and which, after the date of the commencement of this action, purchased all of KFBB's outstanding capital stock.

The initial complaint was filed on March 7, 1962, to which answers were filed and a jury trial demanded. Interrogatories by the respondents were filed in June and July and by the appellant in October. Answers to the interrogatories by the respondent were filed in September and by the appellant in November. An amended complaint was filed and answers thereto were filed on November 8, 1962. Arguments for a summary judgment based on the grounds of the statute of fraud was heard. A summary judgment was granted to each of the defendants on May 6, 1963. This appeal resulted.

Appellant's specifications of error are: (1) The court erred in granting defendants' motions for summary judgment. (2) The court erred in entering summary judgments in favor of the defendants. (3) The court erred in holding that there was an insufficient note or memorandum of the agreement to satisfy the statute of frauds. (4) The court erred in denying plaintiff an opportunity to prove that defendants' fraudulent conduct estopped them from asserting the statute of frauds as a defense.

Appellant's amended complaint alleged that in April 1960, appellant and respondents entered into negotiations for the purchase by respondents of all the outstanding stock of the Great Falls Community Television Cable Co., Inc., and other rights, franchises and privileges owned or to be acquired by appellant or said Cable Company. These negotiations continued for the next several months, and thereafter a conference was held by the parties in Los Angeles, California.

As a result of the California conference, a five-page letter dated September 2, 1960, was prepared and executed. This letter was sent by respondent O'Shea to appellant who acknowledged it. The letter contained terms and provisions for the proposed sale. The letter commenced:

"Dear Mr. Anderson:

"1. We have been discussing with you the purchase from you of all of the issued and outstanding capital stock of the Great Falls Cable Television Company, a Montana corporation (hereinafter referred to as 'the cable company'). * * * [and concluded:]

"6. This letter is intended not as an agreement, but as an evidence of our mutual intentions if an agreement is reached. Since the foregoing envisages a number of separate transactions, it will require a number of separate legal instruments. It, therefore, seems more practical that you and the undersigned go to Great Falls, Montana, where any investigations and preparations for the several documents that will be required, if a deal is reached, better can be made. We are mutually agreed, from this point forward, things must be advanced as quickly as possible, and to that end it is our mutual understanding that you will immediately return to Great Falls and undertake to advance some of the preliminaries required from your side, and that the undersigned, or his representative, will leave for Great Falls for such further discussions as may be necessary or desirable, within a period of eight or nine days.

"If the foregoing is as you understand it, please affix your signature in the space provided therefor.

"Yours very truly,
"/s/ DANIEL T. O'SHEA
"ACKNOWLEDGED:
"/s/ HERBERT ANDERSON"

The amended complaint further alleged that appellant returned to Great Falls where he proceeded, at great inconvenience and expense, to obtain the commitments necessary to enable him to satisfy the requirements set forth in the above-mentioned letter. It is further alleged that around the 25th of September, respondent Scanlon met the appellant in Great Falls, at which time, after appellant demonstrated his ability to perform the commitments established in the September 2 letter, the parties agreed to be bound by the terms of the said letter. Respondents' answers, among other things, admit that negotiations had taken place between the parties for the previously-mentioned proposed sale and purchase, but deny that any such agreement was ever reached.

Thereafter, the parties apparently contacted their respective attorneys and a meeting was held in the office of Mr. Stephenson, attorney for respondents. Stephenson was instructed to prepare several documents referred to in the previously-mentioned letter. Stephenson does not recall whether or not he was told at that time that a deal had been reached, and stated that he had no recollection of such a deal being finalized. A majority of the documents were drafted and prepared in Stephenson's office. All documents have remained unsigned.

On October 10, 1960, respondents advised their attorney that they had "discontinued negotiations" with the appellant. The amended complaint alleges that appellant was so informed by the respondents on November 27, 1960, some six weeks later, after he, the appellant, had lost the other opportunities that had been available to him for the sale of his corporation or the construction of a community antenna system.

The answers filed by the respondents raised the statute of frauds as an affirmative defense. The court did not order appellant to file a reply, consequently, further matters, in avoidance of the defenses raised in the answers, were not alleged.

The motion for summary judgment filed by respondents was based on the statute of frauds. This motion was granted by the trial court as to all respondents.

In answering interrogatories, appellant admitted that none of the respondents had received any part of the involved capital stock or had paid any part of the purchase price thereof which, the amended complaint alleged is a value greater than $200. R.C.M.1947, §§ 13-606, subd. 4, 74-201, 93-1401.7, provide:

"The following contracts are invalid, unless the same, or some note or memorandum thereof, be in writing and subscribed by the party to be charged, or his agent:

＊　＊　＊　＊　＊

"4. An agreement for the sale of goods, chattels, or things in action, at a price not less than two hundred dollars, unless the buyer accept or receive part of such goods, chattels, or the evidences, or some of them, of such things, or pay at the time some part of the purchase-money; * * *." (R.C.M.1947, § 13-606, subd. 4.) Thus, for this alleged contract to be valid, appellant's four specifications of error must be correct, at least in part.

The substance of these four specifications of error is that the letter of September 2 is a note or memorandum sufficient to satisfy the criteria of the statute of frauds, or, in lieu thereof, the unsigned instruments, drafted by the attorneys for the parties, when considered with the letter, collectively constitute the note or memorandum of the agreement satisfactorily to prevent the statute of frauds from being an affirmative defense, or, in lieu thereof, appellant should be given an opportunity to prove that by reason of respondents' fraudulent conduct they are estopped from relying on the statute of frauds as an affirmative defense.

■ The letter of September 2 was signed by respondent O'Shea. The contents of the letter did not identify respondents in their entirety, but merely referred to "we" and "our." We have specifically stated and held: "The note or memorandum must name the parties." Ward v. Mattuschek, 134 Mont. 307, 312, 330 P.2d 971,975; Johnson v. Elliot, 123 Mont. 597, 605, 218 P.2d 703. We have further stated: "The note or memorandum must contain all the essentials of the contract but may be stated in general terms." Ward v. Mattuschek, supra; Dineen v. Sullivan, 123 Mont. 195, 213 P.2d 241. These statements are not in conflict. The parties to the alleged contract must be named specifically while all essentials of the contract, i. e., purchase price, date of sale, item of sale, etc., may be stated in general terms.

■ Further indicia of the fact that the letter of September 2 was not intended to be a note or memorandum for a verbal agreement is found in its last paragraph. The last paragraph of this letter commences: "This letter is intended *not* as an agreement, but as an evidence of our mutual intentions *if* an agreement is reached.'' (Emphasis supplied.) This wording specifically states that negotiations were pending and had not been concluded between the parties at the time of the writing of the letter. Writings relied on as memorandum but which tend to show pending or unconcluded negotiations between parties, are not sufficient to satisfy the statute of frauds. Gibbs v. Peters, 82 Cal.App. 407, 255 P. 521.

■ Appellant argues that the unsigned documents, the documents prepared by the parties' attorneys, when considered with the letter of September 2, collectively constitute the note or memorandum of the agreement. It is a fundamental principle of law in Montana that a memorandum may consist of several writings. Johnson v. Elliot, supra; Gantt v. Harper, 86 Mont. 69, 281 P. 915. But this principle of law cannot be applied to every sundry instrument when the instrument itself negates the existence of a contract.

■ Appellant cites the rule stated in 37 C.J.S. Frauds, Statute of, § 177, p. 656, which states:

"The note or memorandum required by the statute of frauds need not be contained in a single document, nor, when contained in two or more papers, need each paper be sufficient in contents and signature to satisfy the statute."

We agree with this rule, but, this rule will not be applied to each and every type of writing merely because it refers, either directly or indirectly, to an alleged contract.

■ ■ Writings, while stating terms of an alleged contract, must be, at the minimum, complete and consistent with the content of the contract. The documents referred to in this portion of appellant's appeal, each and every one of them, demonstrate that the negotiations had never been concluded —that a contract does not exist. These documents consist of: Work notes of Stephenson in hand-scribbled condition; rough draft of Mr. Stephenson's proposed employment agreement and an incompleted typed copy of this rough draft; a rough draft of Mr. Gilfeather's proposed employment contract and an incompleted typed copy of this rough draft; letters, one of which specifically instructs Stephenson that negotiations had ceased; and an incompleted stock purchase agreement. These documents, in the condition they presently exist, are not acceptable as several writings, which collectively, including the letter of September 2, constitute a note or memorandum sufficient to satisfy the statute of frauds.

Finally, appellant alleges respondents are estopped, because of their course of conduct, from affirmatively pleading the statute of frauds as a defense. Substantiating his position, appellant cites many treatises, statutes and cases.

R.C.M.1947, § 13-605, refers to the enforceability *of a contract* not in writing because of fraud. In Hogan v. Thrasher, 72 Mont. 318, 233 P. 607, we referred to fraud "which is said to be the foundation of the doctrine of part performance *of a parol agreement* * * *." (Emphasis supplied). All of these cita-

tions, and many more that appellant lists, refer to an existing contract.

■ Appellant cites 37 C.J.S. Frauds, Statute of, § 246, p. 751, which states:

"Before the doctrine of estoppel can be invoked there must be competent proof of the existence of the oral contract." We agree with this statement—that for estoppel to prevent the statute of frauds from being invoked as an affirmative defense, a contract must exist, whether orally or in writing.

■ In our previous discussion of this appeal we have held that a contract of the alleged agreement could not be found to exist. Since a contract had not been found to exist, respondents are not estopped from invoking the statute of frauds as an affirmative defense.

The summary judgments of the district court are affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES JOHN C. HARRISON, CASTLES and ADAIR concur.