GLEN DALEY, Plaintiff and Respondent, v. LEONARD DALEY, Defendant and Appellant.

No. 11243.
Submitted November 29, 1967. Decided January 5, 1968.
Rehearing denied January 25, 1968.
436 P.2d 88.

Paul E. Hoffmann, Glasgow, Alexander, Kuenning & Hall, Edward Alexander (argued), Great Falls, for defendant and appellant.

Robert Hurly (argued), Glasgow, for plaintiff and respondent.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal from a judgment entered upon findings of fact and conclusions of law made by the court sitting without a jury. Judgment was for the plaintiff.

Plaintiff and defendant are brothers. Defendant was the owner of farmland in Valley County. In the year 1957, defendant moved to the State of Washington; and, in November, 1957, the brothers entered into a written lease whereby plaintiff would farm the defendant's land for a term ending November 15, 1962. Plaintiff was to do all the work, pay all expenses and defendant, the owner, was to receive one-fourth of the crop.

In 1957, plaintiff received $4,430.55; defendant received $1,476.85. In 1958, plaintiff received $2,888.70; defendant $962.90. In 1959, plaintiff $2,431.85; defendant $810.65. Because of allotment limitations and a discouraging grain price, the brothers decided to put the farm into the Federal soil bank program. To do so, it was necessary for the tenant, plaintiff, to consent. Plaintiff released the remaining term of the written lease. Defendant signed a contract with the government agency to "soil bank" his farm for a period of eight years.

The "soil bank" program, in general, permitted landowners to contract to seed land to grass and to hold the land out of crop production. The government made partial allowance for grass seed, and certain fencing and non-grazing requirements were had.

434

In the Spring of 1960 plaintiff seeded over 600 acres to grass which cost $1,218.23 for seed. $867.38 was paid by the government and received by plaintiff. The annual payment by the government was $4,997.59; and on November 4, 1960, after it was received, defendant paid over to plaintiff one-half plus an amount for fencing materials. Again in 1961 defendant paid plaintiff one-half of the government payment.

At some point in 1962, the situation changed. Defendant received a letter from a friend advising him that the fences were not being kept up. That Fall, defendant paid plaintiff the sum of $1,150.00 instead of $2,498.79 as in the previous two years. Defendant testified that he owed plaintiff $1,200.00, but as a sort of penalty for not keeping the fences up he penalized his brother by $50.00. Plaintiff, on the other hand, asserts that the contract was for the full eight years of the soil bank contract at the agreed price of one-half.

In 1963, plaintiff consulted an attorney who wrote defendant and inquired about the transaction. Defendant's wife, at his direction, replied. Defendant's version of the transaction in that letter was that defendant was to pay one-half for each of the two years, 1960 and 1961, and then $1,500 for the third year in 1962.

Plaintiff sued defendant alleging an oral agreement whereby in consideration of "the plaintiff keeping the premises within the standards of the A. S. C. S. (government) rules and also releasing a farming lease" defendant had agreed to split the income received from the soil bank for the eight-year period from 1959 until 1968 and asking damages for the difference between the $1,150 paid in 1962 and $2,498.79, and for that amount for each year for the balance of the contract. The answer admitted the contract during the years 1960, 1961 and 1962, which years are during the term of plaintiff's original lease, claims performance, but denies any other or further contract. A counterclaim was also interposed seeking damages for cost of repairing fences.

Prior to trial the answer was amended by inserting a second defense as follows:

"Although the oral agreement by its own terms was not to have been performed within one year from the making thereof, neither the agreement nor any note or memorandum thereof was ever subscribed by the plaintiff and defendant, or either of them, nor by the authorized agent of either of said parties."

Plaintiff's proof at the trial was that the agreement was to run for eight years, and he was to receive one-half the proceeds.

Defendant's proof, ignoring for the moment inconsistencies, was that plaintiff was to have the allowance for grass seed, one-half the payment for 1960 and 1961 and $1,200 in 1962, and that the contract had been fully executed, except that he had held back $50.00 in 1962 because plaintiff had not done any work.

The trial court found the plaintiff's version of the contract to be correct and entered judgment accordingly. This appeal followed.

The main issue on the appeal hinges on the application of the statute of frauds. R.C.M.1947, § 93-1401-7. A subsidiary issue is whether the doctrine of "anticipatory breach" awarding plaintiff damages for 1966 and 1967 installments with interest before the soil bank payments were earned could be had.

As to the main issue, defendant attacks certain findings of the trial court; but as we view the case the central question is that relating to the statute of frauds.

That there was an oral agreement to run for eight years was admitted by the defendant. What we have heretofore set up as defendant's position, ignoring inconsistencies, suggests otherwise, but, defendant admitted this under oath. He admitted that plaintiff gave up his written lease which still had three years to run; that plaintiff gave up his summer fallow; that plaintiff planted the grass as he had agreed; that plaintiff had agreed to keep up the fences for the full eight years (although

he disputes that it was done). At one point the amount of $1,500 was offered by the defendant as the amount he owed plaintiff for the year 1963—at another $1,200. At one point defendant stated that plaintiff was to receive $1,200 for the third through the eighth years. We could go on reciting inconsistencies in the defendant's version of the contract, but suffice it to say that the trial judge was justified in disbelieving defendant.

With the answer amended as previously set forth, setting up the statute of frauds as a defense, the counterclaim was not amended, and it sought damages for the third and fourth years of the contract.

Yet, as trial began, no immediate objections were made to testimony relating to the oral contract. Plaintiff testified as to each of the details of the oral contract, including its length and its consideration. It was only then that an objection on the basis of the statute of frauds, R.C.M.1947, §§ 93-1401-7, and 13-606 was made. The trial judge reserved ruling but allowed a continuing objection.

Thus, at this stage of the trial, the entire oral agreement was before the court without objection. Even with the allowance thereafter of a continued objection, counsel did not renew it nor did counsel make exceptions to the findings of fact and conclusions of law. This alone is sufficient to decide the case. The same counsel, except ironically on opposite sides of the issue, were in the recent case of Stapp v. Nickels, ...... Mont. 1967, 434 P.2d 141, where we held that failure to except to findings was fatal.

However, we need not bottom our decision on this technical ground alone. The defendant has woven a web that reeks of fraud. What we have heretofore set up as inconsistencies are most glaring. On October 8, 1963, defendant wrote the letter admitting the existence of the agreement except he claimed it was only for three years and the third year was for $1,500. In September, 1964, defendant by answer and counter-

claim admitted the agreement but now asserted the third year amount was $1,200 and asserted other conditions being that he could sell the land and terminate the contract or continue to pay plaintiff $1,200 per year, then in the counterclaim asserts damages for the fourth year! In a deposition, defendant admits to an eight year term at the amount of $1,200 per year for the last six years. Such glaring inconsistency would be enough to raise an estoppel to the raising of the statute of frauds under the circumstances here. See Fiers v. Jacobson, 123 Mont. 242, 211 P.2d 968, for a discussion of the estoppel doctrine.

In Anderson v. KFBB Broadcasting Corporation, 143 Mont. 423, 391 P.2d 2, this court recognized the doctrine of estoppel but found it inapplicable because no proof of an oral contract existed. Here, we have an admitted oral agreement and the doctrine does apply. (See discussion in 37 C.J.S. Frauds, Statute of § 246, p. 751. See also R.C.M.1947, § 93-1301-6, regarding conclusive presumptions.)

As to what we have hereinbefore referred to as the subsidiary question of the doctrine of "anticipatory breach" on the 1966 and 1967 installments with interest prior to the date of their earning, we shall now consider briefly. The first mention of this issue is on appeal. We have hereinbefore referred to the failure to except to the findings and thus they need not be further considered.

The judgment is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES HASWELL, ADAIR and JOHN CONWAY HARRISON concur.