EDWARD L. MUELLER, Plaintiff and Respondent, v. RAYMOND W. SVEJKOVSKY, Defendent and Appellant.

No. 11617.

Submitted June 11, 1969.

Decided Sept. 10, 1969.

455 P.2d 265.

Patterson & Marsillo, John F. Patterson (argued), Missoula, for appellant.

Jordan, Campbell & Sheridan, Robert J. Campbell (argued), Missoula, for respondent.

MR. JUSTICE JOHN C. HARRISON, delivered the Opinion of the Court.

This appeal is the result of a jury verdict awarding $4,000 damages to the plaintiff due to defendant's alleged breach of contract to sell certain shares of stock in a ranch corporation.

The plaintiff brought the action to recover damages for defendant's breach of contract. The defendant-appellant, R. W. Svejkovsky, hereinafter referred to as the seller, and his wife have the controlling interest in the Swan River Guest Ranch, a Montana corporation. In the spring of 1967, seller placed in the Minneapolis Tribune the following advertisement:

"FOR SALE: Controlling interest in first class operating western Montana Guest Ranch. For full details contact R. W. Svejkovsky, Box 103, Seeley Lake, Montana."

On May 17, 1967, the plaintiff-respondent, Edward L. Mueller, hereinafter referred to as the buyer, answered the advertisement and began a series of negotiations which led the buyer and his wife to take a trip to Montana to personally inspect the ranch in August, 1967. While inspecting the operations of the ranch, buyer was requested by seller not to reveal to employees of the ranch seller's intent to dispose of the ranch. After several days of discussion the parties arrived at what seemed to be complete agreement and they went into Missoula to consult with an attorney to formalize their agreement into a written contract. Both the buyer and seller, with their wives, participated in the conference with the attorney.

This meeting consisted of a discussion of the terms of an

agreement for the sale of the seller's interest. The attorney asked whether the parties could return in two hours to sign the contract, after it was typed, and they indicated they were willing, but the seller's wife had another commitment. It was then agreed to handle the signing by mail. When the parties testified as to the substance of their discussion, they disagreed as to whether or not the matter of a Small Business Administration loan against the ranch was covered. Nevertheless the buyer characterized the meeting as follows:

"And we—like I say, we just discussed the possible terms that were to be agreed on. We agreed upon these fully, and there was no dissension on his part or mine. We didn't argue about a thing."

The buyer and his wife returned to Minnesota, where, in early September 1967, the buyer received a letter from the seller's attorney indicating that the contract had been sent to the seller. The letter said in pertinent part:

"I have prepared the contract with Svejkovskys and yourselves and have sent it on to them for their signatures. As soon as it comes back I will forward it on to you for the signatures of you and your wife."

At the August meeting the possibility of a down payment or earnest money was discussed. The buyer indicated that to make the down payment he would have to auction off his personal property; it was agreed the payment could be made when that was done. Upon this set of circumstances, and in full confidence the sale would be consummated, the buyer resigned from his job and prepared to auction off the property. Notices of the auction were sent to the seller. On the morning of the auction the seller called the buyer and indicated concern because the Small Business Administration had said it would not release the seller from personal liability for the loan. However, the buyer testified:

"He [the seller] said that he would go through with the sale whether SBA approved it or not."

The property of buyer was auctioned off. The seller subsequently repudiated the agreement to sell the ranch.

The buyer then brought this action for damages for breach of contract. The seller contended that the alleged contract, not having been reduced to writing, was within the statute of frauds, and therefore unenforceable. The buyer alleged that the acts of the seller constituted an equitable estoppel, which thereby prevented the seller from raising the defense of the statute of frauds. The case was given to the jury which found in favor of the buyer and against the seller.

On this appeal the seller raises several issues. However, he has not made this appeal from an order denying a motion for a new trial as is the usual practice; instead, he has appealed from the judgment and from orders denying his motions for a directed verdict.

The buyer alleges that under the rule of Hanlon v. Manger, 85 Mont. 31, 227 P. 433, failure to move for a new trial limits the issues on appeal to a determination of whether there is any substantial evidence to support the verdict. However, since that case Rule 2 of the Montana Rules of Appellate Civil Procedure has been adopted. The rule states:

"Upon appeal from a judgment, the court may review the verdict or decision, and any intermediate order or decision excepted or objected to within the meaning of Rule 46 of the Montana Rules of Civil Procedure, which involves the merits, or necessarily affects the judgment, except a decision or order from which an appeal might have been taken."

The buyer's contention that the issues are limited is without merit.

Nevertheless, given our view of the case, the issue dealing with the admission of the written unsigned contract is controlling.

It is the contention of the seller that there was insufficient evidence to support a finding that the parties had an oral contract and that the contract must be proved before other

issues may be reached. This Court has recognized "\* \* \*
that for estoppel to prevent the statute of frauds from being
invoked as an affirmative defense, a contract must exist,
whether orally or in writing." Anderson v. KFBB Broadcast-
Corp., 143 Mont. 423, 391 P.2d 2.

On an appeal from a motion denying a directed verdict
there are three rules which apply. (1) The evidence introduced
by the plaintiff will be considered in the light most favorable
to him. (2) The conclusion sought to be drawn from the facts
must follow as a matter of law. (3) Only the evidence of the
plaintiff will be considered. Pickett v. Kyger, 151 Mont. 87,
439 P.2d 57.

Estoppel must be found or the statute of frauds, section 13-
606(4), R.C.M.1947, will make the oral contract for the sale of
an interest in the majority shares of stock unenforceable. If
the contract is unenforceable, no damages for breach thereof
can be awarded.

Equitable estoppel requires the presence of six factors
which this Court has repeatedly recognized. Hustad v. Reed,
133 Mont. 211, 231 P.2d 1083. One of these factors is conduct,
acts or language amounting to a representation or concealment
of material facts. The only specific conduct possibly raising an
estoppel here is the statement of the seller, during the phone
call which preceded the auction, that he would go through with
the sale regardless of what position the Small Business Admin-
istration took. This is a statement of present intent to do a
future act. The rule previously announced by this Court is
that such a statement is not a sufficient basis for an estoppel.
Fiers v. Jacobson, 123 Mont. 242, 211 P.2d 968.

The reason for this rule is that the buyer is not reasonably
entitled to rely on such a statement. A person may not be
bound under such circumstances to forego changing his inten-
tion, Fiers v. Jacobson, supra. In this case the buyer admitted
that during the course of negotiations leading up to his trip
to Montana, the seller evidenced considerable vacillation as

to whether he really wanted to sell, or could sell, his interest in the ranch. In addition, the seller's concern over the Small Business Administration loan problem, as evidenced by his call to the buyer on the day of the auction, was ample actual warning the seller might not go through with the sale even though he assured the buyer that he would. Therefore we hold there was not sufficient evidence upon which an estoppel could be based.

This being the case the motions for a directed verdict were improperly denied.

The judgment of the district court is reversed and the cause remanded for dismissal.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES HASWELL and CASTLES, concur.