No. 13180

IN THE SUSREME COURT OF THE STATE OF MONTANA

1977

---

ARTHUR H. SANT and EDNA SANT,

Plaintiffs and Appellants,

v.

LAURA THELMA BARIL, As Administratrix
of the Estate of A.R. SMITH, Deceased,

Defendant and Respondent.

And

LAURA THELMA BARIL, As Administratrix
of the Estate of A.R. Smith, Deceased,

Plaintiff and Respondent,

v.

ROBERT SANT,

Defendant and Appellant.

---

Appeal from:   District Court of the Fifth Judicial District,
               Honorable Peter Meloy, Judge presiding.

Counsel of Record:

    For Appellants:

        Landoe, Gary and Planalp, Bozeman,Montana
        Robert Planalp argued, Bozeman, Montana

    For Respondent:

        Chester Lloyd Jones argued, Virginia City, Montana
        Douglas Smith argued, Sheridan, Montana.

---

Submitted:  March 9, 1977

Decided:  JUN -9 1977

Filed: JUN 9 1977

*Thomas J. Gardner*

Clerk.

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This appeal arises out of two causes of action which were consolidated for trial by jury in the district court, Madison County. The first cause is a suit for damages under a land lease executed between lessors, A. R. Smith and Laura Smith, and lessee Arthur H. Sant. This suit was brought by Arthur H. Sant and Edna Sant (Sants), against the Administratrix of the Estate of A. R. Smith (Administratrix). Plaintiffs appeal from the district court granting defendant's motion to dismiss, after plaintiffs presented their case and rested.

The second cause is a suit to recover on a promissory note held by the First National Bank of Twin Bridges, Twin Bridges, Montana, and executed by the Sants and their son, Robert Sant. The promissory note was assigned to the Administratrix and suit was brought by the Administratrix against Robert Sant. The district court treated this action as a counterclaim. Robert Sant appeals from the district court's order directing the jury to return a verdict for the Administratrix.

In First National Bank v. Sant, 161 Mont. 376, 506 P.2d 835, this Court discussed some of the legal problems existing in the present action. As a means of introduction and clarification, we review our holding in that case.

In First National Bank v. Sant, supra, the Sants appealed from a district court judgment granting foreclosure on their real and personal property. This judgment of foreclosure was rendered in favor of the First National Bank of Twin Bridges which sought to foreclose on a mortgage executed by Arthur H. Sant on July 9, 1970, and held by the First National Bank of Twin Bridges. The

mortgage instrument was entitled "(Plan of Paris Robert)". Paris

Robert was the president of the First National Bank of Twin Bridges.

The plan purported to relieve the Sants of liability for certain

creditor debts and balances due the bank on existing notes. This

release was to be accomplished through the bank's disbursement

of funds made available to the Sants by virtue of their executing

three promissory notes. The notes were in the amounts of $17,690.62;

$2,788.05; and $12,968.74, and each bearing interest at the rate

of ten percent per annum. Certain real and personal property of

the Sants was listed as collateral for the mortgage and $50 was

charged by the bank as an expense for organizing the credit plan

and overseeing the payments.

The plan was divisible into three parts with the promissory

notes for $17,690.62 and $2,788.05 to mature February 5, 1971;

while the note for $12,968.74 matured on April 1, 1971. At the

time First National Bank v. Sant was heard none of the promissory

had been paid by the obligors. The notes for $2,788.05 and $12,968.74

were held by the bank and no actual disbursements were made to

Continental Oil Co. via Russell Lepp, or to A. R. Smith, both

listed as corresponding creditors to these notes. It is the

$12,968.74 debt which confronts us in the instant case in the form

of the July 9, 1970 promissory note and the assignment of that

note. The plan indicates the $12,968.74 debt was a consolidation

of debts owed by the Sants to A. R. Smith. Specifically, these

debts are listed as an old promissory note of $8,240; $728.74 in

interest on this old note; and $4,000 consideration for a 1970

lease. These items are of importance later in this opinion.

- 2 -

We held in First National Bank v. Sant that the bank was barred from foreclosing on the promissory notes in the amount of $2,788.05 and $12,968.74 and the Sants were entitled to a credit in the amount of $1,214.32 on the promissory note for $17,690.62. The basis for the $1,214.32 credit was the finding that while the bank had charged $50 as expense for setting up the plan and had charged ten percent interest on the promissory notes, Paris Robert, as agent for the bank, had secretly negotiated with the Sants' creditors for discounts or rebates as a collection fee. We found the bank's failure to disclose such negotiations a breach of a duty owed the principal by his agent and held the Sants entitled to the amount of the rebates, $1,214.32.

The basis for denying the bank foreclosure on the $2,788.05 and $12,968.74 promissory notes was the finding that the notes were not supported by legal consideration. For example, the $12,968.74 promissory note was purportedly executed to evidence debts owed by the Sants to A. R. Smith. However, the promissory note was drafted and held by the First National Bank of Twin Bridges and executed by the Sants and Robert Sant. Since there has never been a showing of any oral or express trust, partnership, agency, joint venture or other such relationship between A. R. Smith and the bank, the promissory note is void for the purpose of establishing the $12,968.74 debt between A. R. Smith and the Sants. The only evidence of any agency relationship is the penciled words "A.R.Smith Trust" which emboss the promissory note and were allegedly written by Paris Robert. In First National Bank v. Sant we set forth those policy reasons which directed why such evidence should not be equated with an express or oral agreement creating a partnership, agency, or trust relationship and, though we refrain from repeating those policy reasons here, we affirm the basis for that holding.

We note that First National Bank v. Sant never discussed the legal sufficiency of the debts embodied in the $12,968.74 promissory note:

> "This holding does not affect any preexisting or present debt between Sant and Smith * * *."
> 161 Mont. 387.

That case held only that the $12,968.74 promissory note could not be sued upon because it was not supported by legal consideration. Such a holding is fatal to any attempt by the Administratrix here to collect on the same promissory note assigned by the bank, apparently without consideration. Any attempt by the Administratrix to recover a debt of $12,968.74 must be by an action independent of the promissory note and must be proven by evidence establishing an obligee/obligor relationship. A suit to recover on the promissory note held by the bank and executed by the Sants and Robert Sant fails to establish such a debt.

Therefore, we hold the district court erred when it directed the jury to return a verdict for the Administratrix on the counterlclaim to recover on the promissory note and that action is dismissed.

The remaining issue is whether the district court erred when it granted the Administratrix' motion to dismiss after the Sants had presented their case and rested in the action for damages under the land lease. We initially recognize that counsel for the Administratrix incorrectly moved for dismissal in this jury trial and the district court inadvertently granted the motion. Rule 41(b), M.R.Civ.P., is controlling:

> "(b) INVOLUNTARY DISMISSAL--EFFECT THEREOF. For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against him. After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his

- 4 -

right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a). Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction or failure to join a party under Rule 19, operates as an adjudication upon the merits."

The Advisory Committee's note to the September 29, 1967 Amendment to Rule 41(b), states:

"Source: Fed.R.Civ.P. 41(b), as amended 1963 and 1966.

"Explanation of change: Under the prior text of the second sentence of this subdivision [Rule 41(b)], the motion for dismissal at the close of the plaintiff's evidence may be made in a case tried to a jury as well as in a case tried without a jury. But when made in a jury-tried case, this motion overlaps the motion for a directed verdict under Rule 50(a), which is also available in the same situation. This overlap has caused confusion. Accordingly it is amended to provide that the motion for dismissal at the close of the plaintiff's evidence shall apply only to nonjury cases (including cases tried with an advisory jury). Hereafter the correct motion in jury-tried cases would be a motion for a directed verdict. This amendment involves no change of substance.

"The first sentence of Rule 41(b), providing for dismissal for failure to prosecute or to comply with the Rules or any order of court, and the general provisions of the last sentence remain applicable in jury as well as nonjury cases.

"This amendment also changes the last sentence of this subdivision to accord with the amendment to Rule 19." (Emphasis added.)

A motion for directed verdict was not offered in the instant case. However, both parties recognize the error and counsel treat the motion for dismissal as a motion for directed verdict in their briefs. Thus, for purposes of this review we will likewise treat the motion for dismissal as a motion for directed verdict under Rule 50(a), M.R.Civ.P.; 9 Wright & Miller, Federal Practice and

- 5 -

Procedure: Civil § 2371; Warren v. Hudson Pulp & Paper Corp., 477 F.2d 229,232; Haugen v. Minnesota Mining and Manufacturing Co., 15 Wash.App. 379, 550 P.2d 71.

The basic rule governing our analysis of the granting of a motion for directed verdict is set out in section 93-5205, R.C.M. 1947:

> "Where, upon the trial of an issue by a jury, the case presents only questions of law, the judge may direct the jury to render a verdict in favor of the party entitled thereto."

Case authority in Montana has established three basic rules which apply in interpreting section 93-5205.

1. Upon a motion for directed verdict in favor of defendant, the evidence introduced by plaintiff will be considered in the light most favorable to plaintiff and as proving whatever it tends to prove.

2. A cause should never be withdrawn from the jury unless the conclusion sought to be drawn from the facts must follow as a matter of law and recovery cannot be had upon any view which could be reasonably drawn from the facts which the evidence tends to prove.

3. In reviewing an order directing a verdict for defendant, the reviewing court will only consider the evidence introduced by the plaintiff and if that evidence, viewed in the light most favorable to the plaintiff, tends to establish the case made by the plaintiff's pleadings the order will be reversed. See: Hannifin v. Retail Clerks, 162 Mont. 170, 511 P.2d 982; Muller v. Svejkovsky, 153 Mont. 416, 458 P.2d 265; Pickett v. Kyger, 151 Mont. 87, 439 P.2d 57; McIntosh v. Linder-Kind Lumber Co., 144 Mont. 1, 393 P.2d 782.

The test commonly employed to determine if the evidence is

legally sufficient to withdraw cases and issues from the jury is whether reasonable men could draw different conclusions from the evidence. Collins v. Itoh, 160 Mont. 461, 503 P.2d 36; Hoffman v. Herzog, 158 Mont. 296, 491 P.2d 713; Shields v. Murray, 156 Mont. 493, 481 P.2d 680; Bridges v. Moritz, 149 Mont. 273, 425 P.2d 721. If only one conclusion is reasonably proper, then the directed verdict is proper.

In the instant case the Sants presented evidence in the district court which tended to prove: (1) That a written lease for the years 1966 through 1968 was executed between the lessors, A. R. Smith and Laura Smith, and the lessee, Arthur H. Sant; (2) that the written lease was orally extended for a period of two years, through April 1971; (3) that the terms of the lease provided the lessee was entitled to the exclusive possession and control of the leased premises, including a house on the leased property; (4) that the Britton family was a tenant of the Sants, residing in the house on the leased property, and the Sants were legally within their rights in attempting to evict the Brittons; (5) that A. R. Smith and members of his family restrained the Sants from evicting the Brittons, and thus interfered with the Sants' exclusive possession of the premises; (6) that interference with the Sants' exclusive possession of the premises was a violation of the lease provisions; (7) that as a result of the Sants' inability to evict the Brittons the Sants were unable to house employees who could work in the Sants' potato fields; (8) that as a result of the Sants' inability to house employees their unattended potato crop for the 1970 crop season was damaged by disease, substantially affecting the sale price of the crop; (9) that the Sants' incurred monetary damages resulting from the

diseased condition of their potato crop, the spread of the disease being proximately caused by A. R. Smith and members of his family by preventing the Sants from providing housing for employees.

In establishing their case the Sants presented evidence in the form of : (1) The written lease and option executed by the lessors and lessee; (2) the testimony of workers who testified they and their families were prepared to work for the Sants and aid in saving the Sants' diseased potato crop, but were compelled to find other employment when the Sants were unable to supply housing; (3) the testimony of horticulture experts who testified regarding the blackleg disease which infected the Sants' 1970 potato crop and the potential for recovering certification of the potato crop by manual roguing of the potato plants.

The evidence, when viewed in the light most favorable to the Sants, could persuade reasonable men to conclude the damages incurred by the Sants was attributable to A. R. Smith's alleged interference with the Sants' exclusive possession of the leased premises. The evidence clearly presents questions of fact as to the proximate cause of the damages incurred by the Sants in the 1970 crop season. In any event, the Administratrix was not entitled to judgment as a matter of law.

Therefore, the district court's order and judgment granting the Administratrix' motion to dismiss is reversed and the cause is remanded for trial on the issues. We note the record fails to disclose any payment by the Sants on the purported oral lease for the 1970 crop season. Absent proof of payment, any potential

recovery by the Sants for damages would be setoff against the lease consideration.

The judgment of the district court is reversed and the cause is remanded, consistent with this opinion.

_____
Justice.


We Concur:

_____
Chief Justice

_____

_____

_____
Justices.