KATHRYN B. CREMER, AS SPECIAL ADMINISTRATRIX OF THE ESTATE OF CORNELIUS M. CREMER, PLAINTIFF AND APPELLANT, *v.* CREMER RODEO LAND AND LIVESTOCK COMPANY AND LEO J. CREMER, JR., DEFENDANTS AND RESPONDENTS.

No. 14001.
Submitted Nov. 22, 1978.
Decided March 21, 1979.
592 P.2d 485.

88

Hutton & Cromley, Rodney T. Hartman (argued), Billings, for plaintiff and appellant.

William R. Morse (argued), Absarokee, for defendants and respondents.

MR. JUSTICE HARRISON delivered the opinion of the Court.

Plaintiff, as special administratrix of the estate of her deceased husband, brought this action in the District Court of the Sixth Judicial District, Sweet Grass County, to impose a constructive trust and to compel defendants to deed certain land located in Sweet Grass County to decedent's estate. A trial by jury began on May 9, 1977, and continued through the following day. At the conclusion of the testimony, the trial court took the case from the jury and granted defendants' motion for a directed verdict. Plaintiff's timely motion for a new trial was denied, and she appeals.

Leo J. Cremer, Sr., and Cornelius (Corny) M. Cremer enjoyed close brotherly and business relationships. Their father, John Cremer, who lived in Wisconsin died in 1936; their mother died five years later. After the death of their mother, another brother, Glynn Cremer, informally distributed what remained of their father's estate. Plaintiff, Corny's surviving spouse, claims that Leo, Sr., received Corny's share of the estate and used it to purchase the land subject of this action and which is described as Township 5 North, Range 15 East, M.P.M., Sec. 34: E½.

The October 14, 1944, deed from the previous owner of the land, J. Arvid Carlson, named the "Cremer Rodeo, Land and Livestock. Company," a Montana corporation owned by Leo Cremer, Sr., as the grantee; it was executed in Merrick County, Nebraska. Plaintiff claims that Leo, Sr., intended to convey this land to Corny but failed to do so prior to his death in 1953. She also contends the Leo, Sr.'s widow, Bertha, delivered a deed to Corny shortly after Leo, Sr.'s death but that it was subsequently lost.

Corny, his wife Kathryn, and their family occupied, used and paid taxes on the land from 1947 until approximately 1974 when Leo Cremer, Jr., raised the question of ownership of the land by attempting to grant an oil and gas lease on it. Corny died in 1975, and plaintiff demanded a deed from the corporation and from Leo, Jr. No deed was provided and this action ensued.

At the conclusion of plaintiff's case, the District Court denied defendants' motion for a directed verdict. After defendants had presented their case and plaintiff had testified as a rebuttal witness, defendants repeated their motion for a directed verdict. It was granted by the District Court at that time.

Plaintiff raises three issues for our determination:

1. Whether the District Court erred in directing a verdict in favor of defendants, entering judgment thereon, and denying plaintiff's motion for a new trial.

2. Whether the District Court erred in refusing to admit plaintiff's Exhibit Nos. 1, 2, and 3.

3. Whether the District Court erred in not submitting the issue of adverse possession to the jury.

In taking the case from the jury, the trial judge stated his reasons in chambers and further elaborated on those reasons in open court for the benefit of the jury:

"THE COURT: I am going to direct a verdict in favor of the Defendants, the Cremer Rodeo Land and Livestock Company and Leo J. Cremer, Jr., upon the basis of the doctrine of laches; on the basis—I took it under advisement but allowed the testimony of the deceased persons in the dead man's statue, and I do not feel that the testimony now would be admissible; and that there is no clear, convincing proof as to the testimony from the dead man's statute; and also on the doctrine of the statute [sic] of frauds. If there was to be any transfer of the property there is nothing in writing to substantiate it. And that all of the documents are in, and the only document pertaining to the land itself is the deed and the abstract of deed showing the name of the Cremer Rodeo Land and Livestock Company.

"We will go in and I will inform the jury.

"*IN OPEN COURT*

"THE COURT: Ladies and Gentlemen of the Jury, this is a matter that I deem there is no factual issue to be determined by the Jury in this matter. I have taken under advisement from the beginning of this case the doctrine of what we call the doctrine of laches and the dead man's statute. I elected to allow the testimony in of the transactions that had transpired or allegedly transpired between the various parties that are all decreased. But there is a very clear, convincing doctrine that the testimony of a dead person is not admissible unless there is clear, convincing proof otherwise. And I feel that this is a matter that the testimony is very confusing. I feel that is the wisdom behind the doctrine of laches and the dead man's statute. And I am going to direct a verdict in this case in favor of the Defendants, Cremer Rodeo Land and Livestock Company and Leo J. Cremer, Jr., upon that basis. That they brought the action under a constructive trust; I feel that this is an action that

should have been brought during the lifetime of one of the parties so that the matter could have properly been before the Court. I think that to try to instruct the Jury in this matter, that I would have to instruct you if it went to the Jury on the doctrines of the statute of fraud, that holds that any conveyance of real estate must be in writing. And that oral evidence is not admitted to alter the written document. I would also have to instruct you on the doctrine of laches. That if the matter has gone for a period of time without action that the party is barred from bringing it. Now there is two sides to all of the issue, and I hate to take a case away from a Jury but I feel that if I instructed you in this case the only way that I could instruct you would be on the doctrine of the statute of frauds and laches and on the dead man's statute, that you are not permitted to have testimony of deceased persons. And here we had the testimony of two deceased persons, both Leo Cremer and Corny Cremer. So there is a complete record of all of the documents and exhibits. And if they desire the Supreme Court can determine what these issues should be in regards to the dead man's statute, the statute of laches and estoppel and the statute of frauds."

Rule 50(a), M.R.Civ.P., addresses the motion for a directed verdict. The basic rule governing granting a motion for a directed verdict is stated in section 93-5205, R.C.M.1947, now section 25-7-302 MCA:

"Where, upon the trial of an issue by a jury, the case presents only questions of law, the judge may direct the jury to render a verdict in favor of the party entitled thereto."

In *Sant v. Baril* (1977), 173 Mont. 14, 566 P.2d 48, 51, we noted three basic rules which apply in interpreting section 93-5205, R.C.M.1947, now section 25-7-302 MCA.

"1. Upon a motion for directed verdict in favor of defendant, the evidence introduced by plaintiff will be considered in the light most favorable to plaintiff and as proving whatever it tends to prove.

"2. A cause should never be withdrawn from the jury unless the conclusion sought to be drawn from the facts must follow as a mat-

ter of law and recovery cannot be had upon any view which could be reasonably drawn from the facts which the evidence tends to prove.

"3. In reviewing an order directing a verdict for defendant, the reviewing court will only consider the evidence introduced by the plaintiff and if that evidence, viewed in the light most favorable to the plaintiff, tends to establish the case made by the plaintiff's pleadings the order will be reversed. (Citations omitted.)"

The Court then went on to say:

"The test commonly employed to determine if the evidence is legally sufficient to withdraw cases and issues from the jury is whether reasonable men could draw different conclusions from the evidence. (Citations omitted.) If only one conclusion is reasonably proper, then the directed verdict is proper." *Sant*, 566 P.2d at 51.

Before applying these principles to the instant case, we must look more closely at the trial judge's reasons for directing the verdict. Altogether, he stated four reasons—laches, estoppel, the statute of frauds, and the "dead man's statute." His final reason, the operation of the "dead man's statute," would have the effect of greatly limiting the amount of evidence the jury could consider. Whether any of these reasons supports the granting of a motion for a directed verdict is the question to which we now turn.

"There is no statutory defense of laches in Montana. It is a creature of equity." *Montana Power Co. v. Park Electric Co-op.* (1962), 140 Mont. 293, 301, 371 P.2d 1, 5. "Laches . . . means negligence in the assertion of a right; . . . and it exists when there has been an unexplained delay of such duration or character as to render enforcement of the asserted right inequitable." *Montgomery v. Bank of Dillon* (1943), 114 Mont. 395, 408, 136 P.2d 760, 766.

Plaintiff alleges in part that a deed to the land was delivered to her husband but subsequently lost. Apparently the first time the true ownership of the land was questioned was when Leo Cremer, Jr., attempted to grant an oil and gas lease in 1974. Prior to that time, Corny and Kathryn occupied, used, and paid taxes on the land for nearly 30 years. There is insufficient evidence in the rec-

ord to support the proposition that plaintiff or her husband was aware that defendants claimed ownership of the disputed land prior to 1974. Therefore, we find that plaintiff or her husband was not negligent in the assertion of this right. As a result, laches should not have been considered by the District Court in its decision regarding a directed verdict.

The next ground mentioned by the trial court as precluding plaintiff's recovery was estoppel. Defendants argue that plaintiff should be estopped from asserting a claim on behalf of her husband's estate because of her, and her husband's, acquiescence in letting the title to the land remain in defendant corporation for so many years.

The equitable principle of estoppel is set out in section 93-1301-6(3), R.C.M.1947, now section 26-1-601(3) MCA:

"Whenever a party has, by his own declaration, act, or omission, intentionally and deliberately led another to believe a particular thing true, and to act upon such belief, he cannot, in any litigation arising out of such declaration, act, or omission, be permitted to falsify it."

As in the case of laches, estoppel is a principle of equity. Defendants' acquiescence in allowing plaintiff and her husband to occupy, use, and pay taxes on the land for an extensive period of time, without informing plaintiff or her husband of their ownership claim, was as misleading as any acquiescence of plaintiff or her husband. As a result, this is not a proper case for the application of estoppel.

Turning to the District Court's reliance on the statute of frauds, we find that it was improperly considered. We note that it was improperly considered. We note that our holding in *Campanello v. Mercer* (1951), 124 Mont. 528, 531, 227 P.2d 312, 313-14, controls this situation:

"Under the facts as found by the court here was a situation where the consideration for a transfer of property was paid by Campanello and the title taken in the name of Cora Ellison. By statute R.C.M.1947, sec. 86-103, a trust is presumed to result in

favor of the person advancing the money. Such a trust is created by operation of law. [Citations omitted.] A trust created by operation of law does not come under the Statute of Frauds and may be proved by parol evidence."

We are left then with the task of determining the effect of the "dead man's statute" in relation to certain testimony. First, we note that this trial was held before the July 1, 1977, effective date of the Montana Rules of Evidence. We cannot, as a result, consider their possible effect in this case. The application statute, then, is section 93-701-3(4), R.C.M.1947:

"The following persons cannot be witnesses:

". . .

"4. Parties or assignors of parties to an action or proceeding, or persons in whose behalf an action or proceeding is prosecuted against any person or corporation, as to the facts of direct transaction or oral communications between the proposed witness and the deceased agent of such person or corporation, and between such proposed witness and any deceased officer of such corporation, *except when it appears to the court that without the testimony of the witness injustice will be done.*" (Emphasis added.)

We find that the rule requiring a foundation to be laid corroborating the claim before the testimony can be heard supports the admission of the testimony in this case. See *Phelps v. Union Central Life Insurance Co.* (1937), 105 Mont. 195, 203, 71 P.2d 887, 891; *Rowe v. Eggum* (1938), 107 Mont. 378, 388, 87 P.2d 189, 192; and *Sharp v. Sharp* (1943), 115 Mont. 35, 39, 139 P.2d 235, 236.

Resisting defendants' motion for a directed verdict at the conclusion of plaintiff's case, counsel for plaintiff stated:

". . . the corroborative facts supporting plaintiff's position, aside from the dead man's statute, are these. The payment of the taxes from 1947 to 1975; possession of the land; cropping it or farming it from 1944 to the present time; still in possession; the delivery of the abstract and the patent by Leo Cremer, Sr., to the Plaintiffs; the direction by Leo Cremer, Sr., to the County Assessor to send the tax statements to K. B. Cremer, et wir. These are all positive facts that

establish and corroborate the claim of ownership of the plaintiffs, aside from the evidence of the dead man's statute. And it is a sufficient basis to allow the evidence under the dead man's statute."

We find that there was sufficient foundation for the District Court to allow the testimony excludible by the "dead man's statute" subject to the giving of a cautionary instruction to the jury regarding the weight it should be accorded. In addition, we find that the District Court erred in granting defendants' motion for a directed verdict. In applying the test of *Sant*, supra, in which only that evidence introduced by plaintiff is to be considered, we note that plaintiff's evidence, when considered in the light most favorable to plaintiff, tended to establish the case made in plaintiff's pleadings. The District Court should have allowed the case to go to the jury. This case, therefore, must be reversed and remanded for a new trial. For the benefit of the District Court, we will briefly address plaintiff's two remaining issues.

Plaintiff's Exhibit Nos. 1, 2, and 3 were letters and notes produced by defendant Leo Cremer, Jr., when he was deposed by counsel prior to trial. He had found them among his father's papers. Their import, but not their authenticity, was questioned. They involved Glynn Cremer's alleged distribution of John Cremer's estate.

At the conclusion of plaintiff's case, counsel for plaintiff raised the question of the admissibility of the exhibits in chambers. In response, counsel for defendants argued that the exhibits should be excluded on the basis of the "dead man's statute". We find that the same considerations which apply to the testimony previously discussed, apply to the exhibits. The fact that the authenticity of the documents was not questioned is significant and the extent to which they tend to corroborate the theory of either of the parties would be helpful to the jury. Therefore, we find that the District Court erred in excluding Exhibit Nos. 1, 2, and 3 on the basis of the dead man's statute.

Plaintiff's final issue concerns the District Court's refusal to submit plaintiff's case to the jury on a theory of adverse possession.

At the conclusion of the trial, plaintiff's counsel moved the court to submit the case to the jury on the alternate theory:

"MR. SHEEHY: At this time we move the Court on the basis of adverse user, and proof on adverse use and prescriptive right.

"THE COURT: The thing on the basis, they have been lands used back and forth by consent there. It was a permissive use rather than adverse; open, notorious and adverse use."

Section 93-2510, R.C.M.1947, now section 70-19-409 MCA states:

"Where it appears that there has been an actual continued occupation of land, under a claim of title, exclusive of any other right, but not founded upon a written instrument, judgment, or decree, the land so actually occupied, and no other, is deemed to have been held adversely."

Whether plaintiff and her husband possessed the disputed land adversely is a question which should have been submitted to the jury under proper instruction with respect to the law. Since the only stated reason for withholding the question from the jury was the court's determination that the use was "hostile," we find that this improperly invaded the province of the jury to determine factual questions.

MR. JUSTICES DALY and SHEA, and PETER G. MELOY, District Judge, sitting in place of MR. JUSTICE SHEEHY, concur.

MR. CHIEF JUSTICE HASWELL concurring in part and dissenting in part.

I concur with the majority in granting a new trial. I dissent from that part of the opinion holding that the case should have been submitted to the jury on the theory of adverse possession.

All the evidence in this case indicates a permissive occupancy and use of the land whether it be based on a construction trust, a lost deed, or otherwise. There is no evidence of open, notorious and hostile possession of the land. In my view, section 93-2510, R.C.M. 1947, now section 70-19-409 MCA, does not supply the missing evidence by way of presumption under these circumstances.