No. 88-183

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

---

THOMAS L. TOPE and ANNA TOPE,

        Plaintiffs and Appellants,

-vs-

LILLIAN RUTH TAYLOR,

        Defendant and Respondent.

---

APPEAL FROM:  District Court of the Twelfth Judicial District,
In and for the County of Chouteau,
The Honorable Gordon Bennett, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Emmons & Coder; Robert J. Emmons, Great Falls, Montana

    For Respondent:

        Hoyt and Blewett; Alexander Blewett, III, Great
Falls, Montana

---

Submitted on Briefs:  Oct. 20, 1988

Decided:  December 9, 1988

Filed:  '88 DEC 9 PM 2 27

*Edwin M. Harrison*

---

Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This case was tried to a jury in the Twelfth Judicial District Court, Chouteau County, the Honorable Gordon R. Bennett, District Judge, sitting for the Honorable Chan Ettien, District Judge, after remand from a summary judgment appeal. The jury returned a verdict in favor of the defendant, Lillian Ruth Taylor, and the plaintiffs appeal. We affirm.

On May 23, 1974, Leslie Taylor drew his last will and testament in the law offices of Hauge, Hauge, Ober and Spangelo in Havre, Montana. Attorney Lester Hauge retained a copy. By his will, Leslie Taylor gave 240 acres to Rodney Frazier, $10,000 to his sister, Lillian Taylor, and the remainder of his estate, later valued at $506,000, to Tom and Anna Tope, in equal shares. Tom Tope and Anna Tope were named as executor and alternative executrix. It is undisputed that Lillian, Tom and Anna were each aware of the will and its contents. This dispute arises because the original will was not produced after Leslie's death.

On May 26, 1974, Leslie went to the Columbus Hospital in Great Falls for colon surgery. While still in the hospital, Leslie became dissatisfied with the planned disposition of his property and began making changes on the copy, transcribing the changes onto the original will. These changes included a division of the 240 acres, giving 160 acres to Rodney and Francis Frazier, and 80 acres to Clinton Frazier. He also interlineated changes giving the Topes one-half of the farmland and Lillian the remaining one-half. There was no re-publication or re-attestation of the changed dispositions.

Upon leaving the hospital, Leslie was unable to continue living at his ranch due to his poor and weakened condition. He began living at the family home in Fort Benton with the assistance of Bobbi Bolta, a sixteen-year-old girl, hired to care for him on a full time basis.

Testimony indicated that between May, 1974, and Leslie's death in March, 1975, he was concerned about leaving such a substantial amount of his property to the Topes, believing Tom Tope to be an inexperienced rancher. Leslie was aware of debts Tom had incurred and was worried liens or claims would be laid against the ranch. Rather than by will, Leslie intended to provide for the Topes in another manner.

Shortly before his death, Leslie and Lillian agreed to sell 10,000 acres of grassland and certain cattle and livestock to the Meissner brothers. While an oral agreement was reached before Leslie entered the hospital, the purchase agreement was executed only two days prior to Leslie's death. The proceeds from the sale were placed in Leslie and Lillian's joint account. In addition, Leslie signed certificates of title to his 1972 International pickup and 1971 Oldsmobile, and told Lillian he wanted her to give those titles to the Topes.

Leslie Taylor entered the hospital on March 22, 1975. He died six days later. Testimony at trial conflicted as to the events of March 22. Lillian stated she took Leslie to the hospital. She testified that upon arriving at his home in Fort Benton, Leslie was sitting on the edge of his bed, looking at what appeared to be his will. Lillian contends that Leslie said he was not satisfied with the will, and did not think it would "hold up." Leslie told Lillian to handle everything and assist the Topes as she saw fit. Lillian

3

testified that Leslie then took the will and the copy into the kitchen, and burned them in the stove.

Bobbi Bolta contradicted Lillian's testimony about these events. Bobbi stated she took Leslie to the hospital. She also indicated that Lillian was never alone with Leslie for him to burn the will. Nurses' records indicated Leslie's sister accompanied him to the hospital.

Lester Hauge telephoned Tom Tope after Leslie's death. Mr. Hauge informed Tom that he was a beneficiary and executor of the estate. Tom told the attorney that he knew Leslie had changed his will, but did not know the exact changes. Mr. Hauge was unaware of the Miessner sale, the joint account or the signed certificates of title.

Two or three weeks after Leslie's death, Anna and Tom Tope met with Lillian at her home to discuss the handling of Leslie's affairs. The testimony of the events surrounding this meeting are varied. Tom testified that Lillian told him "there had been some changes," but did not specify "changes in what." Tom assumed, but was not certain, the changes were due to the recent cattle and livestock sale to the Meissners. In addition, Tom assumed Lillian was in possession of Leslie's will because she had his other personal items. Lillian never specifically told the Topes she had the will, although Anna stated Lillian offered at that meeting to let them read it, but they declined. Tom, however, did not recall the offer.

Both Tom and Anna testified that Lillian promised she would do her best to carry out Leslie's wishes. Tom assumed that Leslie's wishes and Leslie's will were one and the same. By inference, Tom assumed he would receive the majority of Leslie's estate whether or not the will was produced.

4

The will was never produced. Lillian petitioned for letters of administration of intestacy and requested distribution of the estate to her as sole lawful heir. She was appointed the personal representative of the estate. Under the decree of final distribution entered in March of 1976, Lillian received the entire estate, with appraised assets of over $500,000.

Between 1976 and 1982, Lillian gave the Topes assets from the estate including case, totalling over $250,000. Lillian required the Topes to execute promissory notes in exchange for two cash presentments. These notes were cancelled by the trial court.

In October of 1982, when the recently divorced Topes were facing financial disaster, Lillian told Anna that she was going to "start from the ground up" with respect to the distribution of the estate to them. Upon learning of Lillian's statement, Tom decided to probate Leslie's will in an effort to obtain what he believed was rightfully his. This Court found Tom's petition to probate the will was barred by the applicable three-year statute of limitations. In the Matter of the Estate of Taylor (1984), 207 Mont. 400, 675 P.2d 944. However, we further stated that Tom could proceed through "any other remedy available to him." Estate of Taylor, 675 P.2d at 947.

Tom filed a complaint against Lillian on March 24, 1984. An amended complaint was served in July of 1984, with Anna joined as a plaintiff. The Topes pleaded several theories of recovery, including fraud, constructive fraud, laches and estoppel. The trial judge, considering all the evidence before him, including depositions of all the parties, determined no genuine issue of material fact existed and granted summary judgment to Lillian on each of the

theories raised by the Topes. This Court reversed, finding the claim premised on promissory estoppel required reversal of summary judgment. Tope v. Taylor (Mont. 1986), 728 P.2d 789, 43 St.Rep. 2074.

On remand, the jury found that Leslie Taylor had indeed destroyed his will prior to his death. Judgment was entered in favor of Lillian.

The Topes raise the following issues for our review:

1. Did the District Court err in refusing to instruct the jury on estoppel and laches and include those issues in the special verdict form for the jury?

2. Did the District Court err in applying the maxim "Equity Aids the Vigilant" as a bar to equitable relief?

3. Did the District Court err in refusing to enter findings of fact, conclusions of law and judgment for the equity claims asserted by the plaintiffs?

4. Was the evidence sufficient to justify the verdict?

5. Did the District Court err in denying the plaintiffs' request for a new trial?

For purposes of this appeal, we shall join plaintiffs' issues one, two and three which deal with potential equity claims.

As an additional issue for review, respondent urges this Court to award attorney's fees based upon the alleged frivolous appeal filed by plaintiffs.


ISSUE NO. 1: EQUITY CLAIMS

Plaintiffs requested the District Court accept proposed instructions (numbers 28 through 31) relating to laches and equitable estoppel. Plaintiffs sought to bar Lillian from claiming Leslie had destroyed his will in 1975. The trial judge refused the instructions, stating the plaintiffs failed

6

to present a case on that theory. We find the judge's decision appropriate.

Ordinarily, a party is entitled to jury instructions adaptable to his theory of the case. Cremer v. Cremer Rodeo Land and Livestock Co. (1979), 181 Mont. 87, 592 P.2d 485. However, as pointed out in Cremer, this rule is not absolute. The instructions must be supported by credible evidence. This factor was found by the District Court to be lacking.

> Laches . . . means negligence in the assertion of a right; . . . it exists when there has been unexplained delay of such duration or character as to render the enforcement of the asserted right inequitable.

Montgomery v. Bank of Dillon (1943), 114 Mont. 395, 408, 136 P.2d 760, 766. Similarly, estoppel is a principle of equity which bars a party from the benefit of a prior wrong. Kenneth D. Collins Agency v. Hagerott (1984), 211 Mont. 303, 684 P.2d 487. In support of these theories, plaintiffs contend their case was impaired because of Lillian's failure or refusal to state Leslie's will was destroyed. Yet, they failed to present any evidence in support of such impairment. Their principal witness, Bobbi Bolta, testified to the events of March 22, 1975. Bobbi claimed she drove Leslie to the hospital and that Leslie did not have the opportunity to burn his will. Her testimony did not indicate doubts or reservations due to the passage of time. Nor was it evident exhibits, documents or other witnesses became unavailable during the long delay.

The determination of equitable issues rests solely within the discretion of the District Court. Downs v. Smyk (1982), 200 Mont. 334, 651 P.2d 1238. We find no abuse of discretion.

Although plaintiffs sought to use laches and equitable estoppel against the defendant, the District Court found these principles to be more illustrative of the plaintiffs' conduct. As stated in the court's opinion and order:

> [P]laintiffs were not entitled, on the record made, to equitable consideration simply because, whatever devious, inequitable or negligent act or acts might have been committed by the defendant, the plaintiffs slept on their obvious rights and remedies for seven long years. They ignored their right, indeed their duty, to present their copy of the will for probate, if they could not secure the original and no subsequent will or codicil had appeared. Equity aids the vigilant.

We agree with the District Court's finding that the plaintiffs were not entitled to the aid of equity.

Lillian never unequivocally stated Leslie's will was destroyed. However, her actions and representations could lead to no other conclusion. By applying for letters of administration, Lillian certified no will existed. The plaintiffs were aware that they were both beneficiaries and executors of the will. We find Lillian's actions were more than sufficient to alert the Topes to a potential will contest.

Five issues on the special verdict form were submitted to the jury:

1. Did Les Taylor destroy his will?

2. Did Les Taylor obliterate the residuary clause of his will with the intention of revoking it?

3. Did the defendant commit actual fraud?

4. Did the defendant commit constructive fraud?

5. Are the plaintiffs entitled to punitive damages?

The jury answered "yes" to the first question, rendering moot the remaining four questions. No questions of equity were ever placed before the jury, and as discussed above, nor were such claims appropriate. Therefore, the trial judge was not required to make findings and conclusions under Rule 52(a), M.R.Civ.P.


ISSUE NO. 2: JURY VERDICT

Plaintiffs allege the jury verdict was based on insufficient evidence, claiming Bobbi Bolta's testimony defeated Lillian's claim that Leslie destroyed his will.

When a jury verdict is appealed to this Court, our function is to determine whether there is substantial credible evidence to support the verdict. Clark v. Norris (Mont. 1987), 734 P.2d 182, 44 St.Rep. 444.

> The standard for review is substantial evidence. If substantial evidence supports the case of the prevailing party the verdict will stand. The evidence will be viewed in a light most favorable to the party that prevailed at trial and, if the evidence conflicts, the credibility and weight given to the evidence is the province of the jury and not this Court.

Mountain West Farm Bureau Mutual Ins. v. Girton (Mont. 1985), 697 P.2d 1362, 1363, 42 St.Rep. 500, 501. We have examined the 751 pages of transcript provided on appeal and conclude such substantial credible evidence exists to support the jury's verdict.

9

Numerous witnesses were presented at trial. Most testimony focused on Leslie's dissatisfaction with his planned disposition. William Kelly, a long-time friend of the decedent, testified Leslie was aware of Tom's debt problems and was concerned the ranch would fall prey to creditors. Joe Meissner testified that Leslie wanted Lillian to receive all the proceeds from the sale of the grassland which indicated an intent to provide for his sister. Rodney Frazier also testified regarding Leslie's disposition of his assets.

More directly, plaintiffs' allegations focus on the credibility of the witnesses presented at trial. Bobbi Bolta claimed she drove Leslie to the hospital on March 22, 1975. In addition, Bobbi testified that Lillian could not have seen Leslie burn his will, because she was never alone with Leslie. Lillian said he did burn his will in the kitchen stove before being taken to the hospital. As noted by the trial court:

> This is _the_ judgment that is peculiarly and almost exclusively within the realm of the jury and cannot be upset unless no reasonable person could reach the verdict arrived at. Here the question was forthright and rudimentary: did the deceased destroy the document or didn't he? The plaintiffs' key witness said he didn't and the defendant said he did. The jury apparently believed the defendant and disbelieved the plaintiffs' witness. (Emphasis in original.)

We agree. It is not for this Court to retry factual determinations. Dahl v. Petroleum Geophysical Co. (Mont. 1981), 632 P.2d 1136, 38 St.Rep. 1474.

10

ISSUE NO. 3:   REQUEST FOR A NEW TRIAL

Plaintiffs claim the lower court erred in refusing to grant a new trial alleging an error in law occurred at trial. Section 25-11-102(7), MCA.   Plaintiffs claim error in the trial court's refusal to instruct the jury on instructions 28 through 31 and they challenge the sufficiency of the evidence supporting the jury verdict.   Section 25-11-102(6), MCA.   For purposes of our review, we recognize that the decision to grant or deny a new trial is within the sound discretion of the trial court, and will not be overturned absent a showing of manifest abuse of discretion.   Walter v. Evans Products Co. (1983), 207 Mont. 26, 672 P.2d 613.

Previously we examined the appropriateness of plaintiffs' equity instructions.   As mentioned, these instructions were not supported by the evidence presented at trial, nor did the trial judge find plaintiffs entitled to the aid of equity.   The opinion and order supports this conclusion.

The lower court's discretion to grant a new trial for insufficiency of the evidence is exhausted when it finds substantial evidence to support the verdict.   Lindquist v. Moran (1983), 203 Mont. 268, 662 P.2d 281.   The court may not grant a new trial only on the basis that it chose to believe one line of testimony different from that which the jury believed.   Lyndes v. Scofield (1979), 180 Mont. 177, 589 P.2d 1000.   Yet, plaintiffs' argument was based almost entirely on this ground.   As recognized by the lower court, the decision is a matter for the trier of fact --the jury.   The request for new trial was properly denied.   We find no abuse of discretion.

## ISSUE NO. 4:   ATTORNEY'S FEES

Finally, defendant has requested we impose sanctions for a frivolous appeal under Rule 32, M.R.App.P.   We decline to do so.   Where a reasonable ground for an appeal exists, no sanctions under Rule 32 will be imposed.   Searight v. Cimino (Mont. 1988), 748 P.2d 948, 45 St.Rep. 46.

Affirmed.

Justice

We concur:

Chief Justice

Justices