2016 OK CIV APP 56

**Christopher JOHNSTON, Plaintiff/Appellant,**

v.

**James STACY, Defendant/Appellee.**

**Case No. 113,794**

Court of Civil Appeals of Oklahoma, Division No. 2.

FILED AUGUST 18, 2016

Mandate Issued: 09/14/2016

Donald E. Smolen, SMOLEN, SMOLEN & ROYTMAN, PLLC, Tulsa, Oklahoma, for Plaintiff/Appellant

Neil D. Van Dalsem, TAYLOR, RYAN, MINTON, VAN DALSEM & WILLIAMS, P.C., Tulsa, Oklahoma, for Defendant/Appellee

## OPINION BY P. THOMAS THORNBRUGH, PRESIDING JUDGE:

¶1 Christopher Johnston appeals the result of a jury trial in a vehicle negligence suit. On appeal, we find that the prejudice caused by the admission of evidence that Johnston was convicted of assaulting a police officer in 2006 substantially outweighed any probative value of the evidence, and likely affected the outcome of the trial. Hence, we vacate the jury verdict and remand this matter for a new trial.

## BACKGROUND

¶2 The factual situation presented is straightforward. Plaintiff Johnston was riding his motorcycle westbound on 11th Street. Just beyond the intersection of 11th Street and Quincy Avenue, the right-hand lane was closed due to construction work. Johnston was riding in the left-hand lane. While Johnston was approaching or passing the construction, defendant James Stacy exited from a private drive that entered onto the westbound lanes of 11th Street. At this point, the parties' accounts diverge.

¶3 Johnston states that Stacy pulled out into the *left-hand lane*, facing Johnston with an immediate emergency, and that he "laid down" his motorcycle to avoid a collision with Stacy. The motorcycle then skidded and crossed the centerline, where it struck another vehicle. Stacy states that he made a right turn into the *right-hand lane only*, relying on the protection of the construction zone, and never crossed into Johnston's lane. He argued that Johnston either suddenly lost control of his motorcycle, or misinterpreted Stacy's vehicle as a threat and took unnecessary evasive action. The main task of the jury at trial was to decide which of these two accounts was correct, and hence whether Stacy had any liability for the accident. There were other witnesses, but their accounts were contradictory as to whether Stacy pulled out into the left-hand lane while making his turn onto the street. As the matter was almost entirely one of deciding the credibility of these opposing witnesses, the trial concentrated substan-

tially on matters of "impeachment/credibility" evidence.

¶ 4 The jury found in favor of Stacy. Johnston now appeals, arguing that the following evidence was improperly admitted and prejudicial:

1. Evidence that Johnston was not wearing a motorcycle helmet at the time of the accident;

2. Evidence that Johnston had a prior felony conviction for assaulting a police officer;

3. Evidence that an eyewitness worked for the same firm as Johnston's counsel; and

4. Evidence that Johnston's driver's license did not show a motorcycle endorsement.

## STANDARD OF REVIEW

■ ¶ 5 Rulings concerning the admissibility of evidence are measured against the abuse of discretion standard. *See Jordan v. Gen. Motors Corp.*, 1979 OK 10, ¶ 12, 590 P.2d 193. The Oklahoma Evidence Code, 12 O.S.2011 & Supp. 2015 §§ 2101 through 3011, allows all relevant evidence to be admitted unless excluded by rules of evidence. Title 12 O.S.2011 § 2401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." However, relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, needless presentation of cumulative evidence, or unfair and harmful surprise." 12 O.S.2011 § 2403. The court must seek a balance of probative value and potential prejudice on the facts of each case. "The injection of irrelevant or otherwise inadmissible evidence is ordinarily not grounds to reverse a jury verdict unless that error was prejudicial." *James v. Midkiff*, 1994 OK CIV APP 165, ¶ 6, 888 P.2d 5 (citing 12 O.S. § 78; and *Karriman v. Orthopedic Clinic*, 1973 OK 141, 516 P.2d 534). "The test of prejudice is the likelihood the verdict would have been different had the error not occurred measured by the usual criterion of the verdict's support in the evidence." *Id.*

## ANALYSIS

### I.  HELMET TESTIMONY

■ ¶ 6 The district court allowed testimony, over Johnston's objection, that Johnston was not wearing a motorcycle helmet at the time of the accident. Johnston had previously filed a motion in limine seeking to exclude any questions regarding helmet nonuse, which the court denied. Unlike the law related to the use of seatbelts, no rules apparently have been established by the Oklahoma Legislature or pursuant to common law regarding the introduction of evidence of use or nonuse of a motorcycle helmet. This question appears to have a public policy dimension, and the only statement we have from the Legislature on this matter is its repeal of the law requiring helmet use. Courts in other jurisdictions are split on the issue of whether evidence of helmet nonuse is admissible. A substantial number prohibit the introduction of such evidence.[1] A number of other jurisdictions allow such evidence in damages questions for the limited purpose of allowing testimony that injury to the head area could

1. *See e.g.*, the list compiled by the Supreme Court of Wisconsin in *Stehlik v. Rhoads*, 253 Wis.2d 477, 645 N.W.2d 889, n. 8 (2002), which includes *Dare v. Sobule*, 674 P.2d 960 (Colo.1984), and *Lawrence v. Taylor*, 8 P.3d 607 (Colo.Ct.App. 2000) (disallowing evidence of the plaintiff's failure to wear a helmet while on a motorcycle in order to prove the plaintiff's negligence or failure to mitigate damages); *Kealoha v. County of Hawaii*, 74 Haw. 308, 844 P.2d 670 (1993) (holding that because there was no common law duty to wear a helmet, evidence showing that the plaintiff's failure to wear a helmet was properly excluded); *Rogers v. Frush*, 257 Md. 233, 262 A.2d 549 (1970) (stating that the lack of a statute requiring the plaintiff to wear a helmet meant that there could be no negligence for that failure); *Burgstahler v. Fox*, 290 Minn. 495, 186 N.W.2d 182 (1971) (disallowing evidence that the plaintiff's failure to wear a helmet constituted negligence); *Mayes v. Paxton*, 313 S.C. 109, 437 S.E.2d 66 (1993) (holding that the plaintiff's failure to wear a helmet did not constitute negligence). *See also McKinley v. Casson*, 80 A.3d 618, 626–27 (Del. 2013); and *Moore v. Swoboda*, 213 Ill.App.3d 217, 157 Ill.Dec. 37, 571 N.E.2d 1056, 1071 (1991).

have been reduced by helmet use.[2] We find no state in which motorcycle helmets are not mandatory that allows the general admission of evidence of helmet nonuse. We further find no tradition in Oklahoma jurisprudence that evidence of helmet nonuse can be introduced for the purpose of establishing liability or contributory negligence, and we hold that such evidence is generally inadmissible.

¶7 The second undecided question is whether evidence of helmet nonuse is admissible for the limited purpose of arguing that the use of a helmet may have reduced the degree of injury. We have neither guidance as to the will of the Legislature, nor guidance on how the Oklahoma Supreme Court would rule on this issue. Before the advent of mandatory seat belt laws, when the legal status of seat belts was similar to the current status of motorcycle helmets, the Supreme Court found, in *Fields v. Volkswagen of Am., Inc.,* 1976 OK 106, ¶62, 555 P.2d 48, that "evidence of the failure to use seat belts is not admissible to establish a defense of contributory negligence *or to be considered in mitigation of damages.* For the present time we await the direction of the legislature." (Emphasis added). In *Comer v. Preferred Risk Mut. Ins. Co.,* 1999 OK 86, ¶19, 991 P.2d 1006, the Court noted that, when enacting the mandatory seat belt legislation, the Legislature "could have overruled *Fields* [...] and established a basis for a negligence action," but did not do so. In the absence of any definitive statement to the contrary by the Legislature or Supreme Court, we will assume that the doctrine applied to one safety device applies to another with a similar arena and purpose, and that evidence of helmet nonuse currently is not admissible in a damages argument.[3]

2. *See e.g., Warfel v. Cheney,* 157 Ariz. 424, 758 P.2d 1326, 1332 (Ariz. Ct. App. 1988) (when evidence of helmet nonuse is relevant to the issue of damages, defendants must also produce evidence showing what portion of the injuries sustained by plaintiff was attributable to helmet nonuse); and *Halvorson v. Voeller,* 336 N.W.2d 118, 118 (N.D. 1983) (evidence of nonuse of a helmet has no relevance to the issue of liability for causing an accident; nonuse may, however, be relevant to the issue of damages).

3. Although Stacy's appellate brief states that the helmet testimony was admissible as evidence of "failure to mitigate damages," we find no mitiga-

¶8 Stacy argues, however, that the question regarding helmet nonuse had an entirely different purpose, for which it was admissible. Stacy contends that, because of the angle of the sun, Johnston's vision was impaired, and hence the jury should discount Johnston's testimony that Stacy pulled into his lane. Stacy argues that the question whether Johnston was wearing a helmet was necessary to *rule out* the possibility that Johnston was wearing a tinted visor that could counteract the alleged affects of the sun. The actual question at trial, however, did not raise the question of a tinted visor, but asked only whether Johnston was wearing a helmet.

■ ¶9 This question can be likened to attempting to establish whether a vehicle suddenly decelerated by asking if the driver "felt the seat belt press against her chest." Although the question may obliquely support an inference of deceleration, it is a poor evidentiary substitute for a direct question, and should be carefully scrutinized as an attempt to introduce otherwise inadmissible evidence. Likewise, we find the question regarding helmet nonuse irrelevant to the issue of Johnston's vision, and find it should not have been allowed. We do not, however, find this introduction of irrelevant evidence, standing alone, sufficiently prejudicial to determine that the verdict would have been different.

## II. JOHNSTON'S PRIOR CONVICTION

■ ¶10 The following exchange took place at trial while Stacy's counsel was questioning Johnston:

tion issue was raised at trial, and Johnston claimed no head injury. Further, the effect of a helmet on specific injuries sustained in a collision appears to be beyond the common knowledge of a jury, and no medical/bio-mechanical expert witness was presented to establish such a defense. We note the statement of the Supreme Court in *Fields* rejecting the argument that a failure to use a seat belt may constitute a failure to "mitigate damages" on the clear principle that "[o]ne's duty to mitigate damages cannot arise before he is damaged." 1976 OK 106 at ¶60, 555 P.2d 48.

Q: Okay. Now, you were not happy with the police at the scene of the accident; is that correct?

A: What do you—I'm not sure. What are you saying?

Q: Were you unhappy with the way that the officer investigated the accident on September 6th of 2011?

A: He was very irritated because I didn't want him touching my motorcycle. I didn't want him damaging it to move it or anything; I wanted Marty to do it, so I told him not to touch my bike. And he had to direct traffic and it irritated him, I think.

Q: So you weren't happy with the officer at the scene?

A: Well, no, he didn't even talk to me.

Q: You felt like he treated you unfairly that day?

A: I would say that's a fair conclusion.

Q: And you believe that he had treated you unfairly that day because of a prior felony conviction, is that correct?

MR BEESLEY: Objection, Your Honor. Again, I will renew my objection to this as we outlined on the record earlier today under 2609 and 2403 of Title 12.

THE COURT: I overruled it—it would have—in regard to that. That's the one we were discussing.

Q: (By Ms. Medley) All right. You can go ahead and answer the question, Mr. Johnston.

A: What was the question?

Q: You were upset with the police officer at the scene because of a prior felony conviction that you had; is that correct?

A: That isn't what upset me about it.

Q: But you.

A: It upset me because he talked to everybody, and by the time he came to me, the very last person, the way he treated me when he came to me is what upset me.

Q: And you felt he treated you unfairly because of a prior felony conviction; is that right?

A: Yes I do.

Q: And what is your prior felony conviction for?

A: Assault and battery on a police officer.

¶ 11 Johnston argues that the court's decision to allow Stacy's counsel to raise his prior felony conviction and require him to answer questions regarding it constitutes prejudicial error requiring a new trial. Investigating the "prior discussion" noted by the court, it appears that Stacy's counsel proposed, and the court agreed, that, pursuant to 12 O.S.2011 § 2609, evidence of a prior felony conviction of a party to a civil trial *must* be admitted by the court, and is not subject to the usual § 2403 "probative value versus unfair prejudice" inquiry that applies to other evidence in a civil trial. The basis for this unusual argument lies in § 2609(A)(1), which states:

> Evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Section 2403 of this title, if the crime was punishable by death or imprisonment in excess of one (1) year pursuant to the law under which the witness was convicted, and evidence that an accused has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused[.]

The familiar § 2403 states:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, needless presentation of cumulative evidence, or unfair and harmful surprise.

¶ 12 The theory advanced by Stacy and accepted by the district court is that the probative value versus unfair prejudice inquiry stated by § 2609(A)(1), and again by § 2403, applies *only* to attempts to introduce a prior conviction against a party in *criminal trials*. As Stacy's counsel argued to the court:

> MS. MEDLY: Your honor, I believe, and we discussed this back in chambers, that 2609(A)(1) talks about convictions **shall** be admitted if they're within the ten years prior to the time of the witness giving testimony. I think the protection that Mr. Beesely is talking about is afforded only to a criminal defendant. The statute is clear

in discussing that it protects the accused. Mr. Johnston is not on a criminal trial here, he is a material fact witness to this case, he's actually the plaintiff.... (Emphasis added).

¶ 13 No citation to any authority for this exemption from the evidentiary rule set forth in § 2403 appears in the trial court record, and no authority for it is cited in Stacy's appellate brief. In fact, Stacy appears to concede in his appellate briefing that a probative value versus unfair prejudice inquiry *does* apply in such cases, in direct opposition to the argument of his counsel at trial.

¶ 14 Examining the underlying law on this question, we note that the U.S. Supreme Court held, in *Green v. Bock Laundry Mach. Co.*, 490 U.S. 504, 109 S.Ct. 1981, 104 L.Ed.2d 557 (1989), that Fed. R. Evid. 609(a)(1) *mandated* admission, for impeachment purposes, of a prior felony conviction of a civil plaintiff or defendant, and declared such evidence to be exempt from the inquiry of Fed R. Evid. 403, even though the Court recognized "the mandatory admission of all felony convictions on the issue of credibility may in some cases produce unjust and even bizarre results." *Id.* at 507, 109 S.Ct. at 1983 (quoting *Diggs v. Lyons*, 741 F.2d 577, 582 (3d Cir. 1984)).

¶ 15 However, in 1990, after *Green* was decided, Fed. R. Evid. 609 was amended. The Advisory Committee Notes are clear that one purpose of these amendments was to reinstate the Rule 403 probative value versus undue prejudice test in the admission, in a civil trial, of a prior felony conviction not involving dishonesty.

> The amendment reflects the view that it is desirable to protect all litigants from the unfair use of prior convictions, and that the ordinary balancing test of Rule 403, which provides that evidence shall not be excluded unless its prejudicial effect substantially outweighs its probative value, is appropriate for assessing the admissibility of prior convictions for impeachment of any witness other than a criminal defendant.

Advisory Committee Notes to the 1990 amendments to Fed. R. Evid. 609.

¶ 16 Oklahoma has followed a similar path. In 1981, 12 O.S. § 2609—the Oklahoma version of Fed. R. Evid. 609—referred only to attacking the credibility of a "witness." By 1991, after *Green*, it referred to "evidence that a witness other than an accused has been convicted of a crime" as admissible "subject to section 2403 of this title." A civil plaintiff or defendant who becomes a witness is not an "accused;" therefore, the matter is subject to 12 O.S. § 2403. We hold that the probative value versus unfair prejudice inquiry clearly and unmistakably applies to the admission of evidence of a felony conviction against a party to a civil trial.

¶ 17 Based on the record of discussion before trial, it is clear that the district court ruled that the § 2403 inquiry was not applicable, and on that basis allowed evidence of Johnston's felony conviction to be admitted. This was an error. However, the question before us is not simply the error of law, but also whether the admission of Johnston's prior conviction was improper pursuant to § 2403, and if so, whether it justifies a new trial in this matter.

¶ 18 The potential for prejudice in admitting a felony conviction for assaulting a police officer is clear. The public does not take kindly to such matters. The pre-trial activities and discussion before trial shows that both parties were keenly aware of the affect such evidence may have on the jury. The probative value of the evidence is much less clear. No assault of any kind was alleged. Stacy appears to advance two theories. The first is that the prior felony conviction is inherently probative of Johnston's general credibility as a witness. Standing alone, this is something of a slender reed. Section 2609 is clear that evidence of a crime involving dishonesty (and thus reflecting immediately upon the capacity of the witness to always tell the truth) is automatically admissible for that purpose, and not subject to the § 2403 inquiry. This indicates that felonies not involving dishonesty are subject to different rules. The probative value of a prior felony conviction for assault, in a civil trial which revolves on the question of which lane a driver pulled into, appears limited, and veers very close to "character evidence."

¶ 19 More specifically, Stacy argues in appellate briefing that introducing the conviction was justified as impeachment because *Johnston had attacked the credibility of the defendant's witness*, attending Officer Haywood, by claiming the officer was "out for revenge." Stacy argues that the introduction of Johnston's prior felony conviction for assaulting a police officer thus was relevant to rebut this "attack" on the officer's credibility.

¶ 20 It is clear from the transcript section reproduced above that this purported "attack on the officer's credibility" was solicited on cross-examination by *Stacy's counsel,* and revolved around a question regarding the moving of Johnston's motorcycle from the scene post-accident. Further, the testimony of Officer Haywood at trial involved only undisputed facts. Officer Haywood came to no conclusion as to who was at fault in the accident or whether Stacy pulled into Johnston's lane, which was *the only issue of consequence in this trial.*

¶ 21 What we have is a classic evidentiary "harpoon." Officer Haywood was called as a witness for the *defense* in this matter. By deliberately soliciting testimony that Johnston felt the officer was unfair or biased, it was Stacy who originally attempted to introduce testimony *challenging the credibility of his own witness.* Surprise is a valid justification for impeachment of one's own witness subject to the limitation that the party presenting the witness is both surprised and injured by the tesimony. *Reynolds v. State,* 1979 OK CR 118, ¶ 11, 617 P.2d 1357. Officer Haywood had not even testified when the exchange quoted above took place. Soliciting a challenge to the credibility of Stacy's *own witness* was clearly a device to create an "attack" on Officer Haywood's credibility that could then be "impeached" by introduction of Johnston's prior felony conviction.

¶ 22 Given that no portion of Officer Haywood's testimony regarding the accident appears to have been disputed, the question of whether Johnston felt he was "fair" or whether Haywood and Johnston "got on" after Haywood arrived on the scene is irrelevant to the central issue of which lane Stacy pulled into. If counsel solicits an opinion from his *own client* attacking the credibility of *opposing witnesses,* impeachment by admission of a felony conviction may be appropriate. However, we cannot approve of a party deliberately soliciting an attack on his or her *own witness* in order to create justification for the introduction of a prior conviction. We find the admission of this clearly prejudicial evidence had little probative value, and was introduced primarily as a character attack against the plaintiff.

¶ 23 Given that no forensic evidence or expert reconstruction was introduced in this trial, and that the matter turned almost entirely on the competing accounts of the parties and eye-witnesses, we find a likelihood the verdict would have been different had this error not occurred, measured by the usual criterion of the verdict's support in the evidence. We grant a new trial on this basis.

### III. EVIDENCE THAT WITNESS MARK MILLER WORKED AT PLAINTIFF'S LAW FIRM

■ ¶ 24 Mark Miller, an attorney with the firm of Johnston's counsel, witnessed the accident in question. Stacy's counsel stated during opening that Miller was employed by the same firm as Johnston's counsel. The record shows no objection at that time. When Johnston's counsel called Miller to testify, he began almost immediately with a series of questions confirming that they worked for the same firm. Comments which arise in opening statements and are passed without contemporaneous objection trigger only plain error review by the Court. *Brewer v. City of Tulsa,* 1991 OK CR 59, 811 P.2d 604. We find no plain error in this matter, and do not comment on the likely outcome had an objection been preserved.

### IV. THE LACK OF A MOTORCYCLE ENDORSEMENT ON JOHNSTON'S LICENSE

■ ¶ 25 Given that we have found the admission of Johnston's prior felony conviction constituted error that likely affected the verdict in this case, the question of whether it was prejudicial to introduce evidence that Johnston's license did not bear a "motorcycle endorsement" is of limited significance. Be-

cause the issue may arise again on remand, however, we note that 47 O.S. Supp. 2015, § 6–101 provides as follows:

> D.   No person shall operate a motorcycle or motor-driven cycle without having a valid Class A, B, C or D license with a motorcycle endorsement. . . .
>
> E.   Except as otherwise provided by law, any person who lawfully possesses a valid Oklahoma driver license which is eligible for renewal shall be required to successfully complete a written examination, vision examination, and driving examination for a motorcycle as prescribed by the Department to be eligible for a motorcycle endorsement. The written examination and driving examination for a motorcycle may be waived by the Department of Public Safety upon verification that the person has successfully completed a certified Motorcycle Safety Foundation rider course approved by the Department.

¶ 26 There have been numerous versions of 6–101 in the previous 30 years. Stacy introduced testimony that Johnston's license did not bear the motorcycle endorsement. Johnston testified that he was "grandfathered" as a motorcycle rider under the law, and had taken a driving test on a motorcycle, but that the endorsement disappeared from his license due to a bureaucratic error when he transferred his license to California and then back to Oklahoma. He also testified that he had been charged with riding a motorcycle without the required endorsement, but that the charges had been dropped.

¶ 27 Stacy argued that it was not legally possible for Johnston to have had the endorsement or been "grandfathered" at the time he claims this occurred. Under these circumstances, the question of whether Johnston was or was not *legally* privileged to ride a motorcycle on the day of the accident appears to be one of law for the court, not a question for a jury, and this question should have been resolved before trial. If he was privileged by law to ride the motorcycle, the lack of the endorsement appearing on his license is irrelevant to this case. If he was not, it is up to the discretion of the court whether this evidence is admissible.

## CONCLUSION

¶ 28 We find that this proceeding was marred by two errors in the admission of evidence. The first was the injection of the fact that Johnston was not wearing a helmet. We do not find the prejudice generated by this error to be sufficient, standing alone, to warrant reversal. However, this error was coupled with the more serious error in admitting evidence of Johnston's prior felony conviction for assaulting a police officer. We find a likelihood the verdict would have been different had this error not occurred, measured by the usual criterion of the verdict's support in the evidence. We therefore grant a new trial on this basis.

¶ 29 **VACATED AND REMANDED FOR NEW TRIAL.**

GOODMAN, C.J., and BARNES, J., concur.